**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IBRAHIM NIYAZI BODUR | : | |
| | : | |
| Plaintiff, | : | C.A. No.: 11-cv-3475 |
| | : | |
| v. | : | |
| | : | |
| PALISADES COLLECTION, LLC and | : | |
| PRESSLER AND PRESSLER, LLP, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS', PALISADES COLLECTION, LLC AND
PRESSLER & PRESSLER, LLP, MEMORANDUM OF LAW IN SUPPORT
OF JOINT MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P 56**

Jonathan J. Greystone, Esquire
**SPECTOR GADON & ROSEN, P.C.**
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 214-8927(215) 241-8844 (fax)
jgreystone@lawsgr.com

Counsel for Defendant,
Palisades Collection, LLC

        - and -

Mitchell Williamson, Esquire
**PRESSLER & PRESSLER, LLP.**
7 Entin Road
Parsippany, NJ 07054
(973) 753-5100/(973) 753-5353 (fax)
mwilliamson@pressler-pressler.com

Counsel for Defendant,
Pressler & Pressler, LLP

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ........................................................................................................2

II.   FACTS ....................................................................................................................5

III.  STANDARD OF REVIEW ......................................................................................6

IV.   LEGAL ARGUMENT .............................................................................................8

      A.   Plaintiff's Claim That Defendants Violated The Fair Debt Collection Practices
           Act and/or The New York General Business Law As A Result Of Phone Calls
           Made To Plaintiff Concerning The Alleged Debt At Issue Has No Basis In Law
           Or Fact ..........................................................................................................8

      B.   The Correspondence Plaintiff Received From Pressler Did Not Violate The Fair
           Debt Collection Practices Act and/or New York General Business Law .................16

      C.   In Order To Proceed Under The Fair Debt Collection Practices Act, Plaintiff
           Must Be A Defined "Consumer" And The "Debt" Must Be A Defined Consumer
           Obligation Which Is Not Present In The Instant Case ................................................29

      D.   Palisades Can Not Be Held Liable For The Allegations Made In Plaintiff's
           Complaint ..........................................................................................................31

V.    CONCLUSION....................................................................................................32

# TABLE OF AUTHORITIES

## CASES

Aklwadi v. Risk Mgmt. Alternatives, Inc., 236 F. Supp. 2d 492, 505-06 (D.N.D 2004) ............. 11

Allan v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996)(citing Anderson, 477 U.S. at 247-48) ........... 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ........................................................ 6

Brown v. Henderson, 257 F. 3d 246, 252 (2d Cir. 2001) ............................................................. 7

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 324 (1986) ............................................................ 6

cf, Shiverton v. Fed. Fin. Group, Inc., 399 F. Supp. 2d 96 (D.Conn. 2005) ................................ 11

Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2nd Cir. 1994) .......................................... 6

Cirkot v. Diversified Fin. Sys., 839 F. Supp. 1941 (D. Conn, 1993) ........................................... 24

Dutton v. Wolhar, 809 F.Supp. 1130 (D. Del. 1992) .................................................................. 26

Fashakin v. Nextel Commc.'ns, 2009 W.L. 790350, at *1 (E.D.N.Y. Mar. 25, 2009) ............... 13

FDC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-245 n.5 (1972) ....................................... 28

Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985) ..................................... 23

Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ............................................................ 7

Martin v. Sands, 62 F.Supp. 2nd 196 (D. Mass, 1999) ............................................................... 26

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1996)
    (quoting Fed.R.Civ.P. 56(e)) ................................................................................................ 7

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006)
    (quoting First Nat'l. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968) ............... 7

Nebraska v. Wyoming, 507 U.S. 584, 590 (1993)
    (quoting Celotex, 477 U.S. at 322) ........................................................................................ 7

Newman v. Chackrite Cal., 912 F.Supp. 1354 (ED CA, 1995) .................................................. 28

Prewitt v. Wolpoff & Abramson, LLP, No. 05-cv-725 S(F) 2007 WL 841778,
    at *6-7 (W.D.N.Y. March 10, 2007) ...................................................................................... 11

Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)(collection case) ........................................ 7

United States Ex Rel Romano v. N.Y. Presbyterian, 426 F. Supp. 2nd 174, 177 (S.D.N.Y. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 324 (1986) ............................................. 6

United States v. National Fin. Servs., Inc., 820 F.Supp. 228 (D. MD. 1993)............................. 26

Udell v. Kan. Counselors, Inc., 313 F. Supp. 2d 1135, 1144 (D.Kan. 2004) .............................. 11

## STATUTES

15 U.S.C. §1692a(f) ...................................................................................................... 24

15 U.S.C. §1692 .................................................................................................... 2, 8, 22

15 U.S.C. §1692(a),(e) ..................................................................................................... 8

15 U.S.C. §1692e(2)(a) .................................................................................................. 22

15 U.S.C. §1692a(3) ................................................................................................. 22, 29

15 U.S.C. §1692a(4) ................................................................................................. 22, 29

15 U.S.C. §1692a(5) ...................................................................................................... 30

15 U.S.C. §1692a(6) ........................................................................................... 23, 30, 31

15 U.S.C. §1692b .................................................................................................... 2, 24

15 U.S.C.§1692(b)(3) ..................................................................................................... 24

15 U.S.C. §1692c(5) ...................................................................................................... 23

15 U.S.C. §1692d ..................................................................................................... passim

15 U.S.C. §1692d(1) ...................................................................................................... 23

15 U.S.C. §1692d(6) ........................................................................................................ 2

15 U.S.C. §1692e ....................................................................................................... 2, 25

15 U.S.C. §1692e(2)(a) ...................................................................................... 2, 22, 25, 26

15 U.S.C. §1692e(2)(b) .................................................................................................... 2

15 U.S.C. §1692e(5) ....................................................................................... 3, 22, 25, 26

15 U.S.C. §1692e(10) ................................................................................ 3, , 22, 25, 26

15 U.S.C. §1692e(12) ................................................................................................. 3

15 U.S.C. §1692f ............................................................................................... 3, 22, 27

15 U.S.C. §1692f(1) ............................................................................................... 3, 28

NYGBL §349 ............................................................................................................. 3

## **OTHER AUTHORITIES**

Fed.R.Civ.P. 56(c) ...................................................................................................... 6

Defendants', Palisades Collection, LLC (hereinafter also referred to as "Palisades") and Pressler & Pressler, LLP (hereinafter also referred to as "Pressler"), (collectively also referred to herein as "Defendants"), by and through their respective counsel, Spector Gadon & Rosen, P.C. and Pressler & Pressler, LLP, respectfully submit this Joint Memorandum of Law in Support of their Joint Motion for Summary Judgment, and in support thereof aver as follows:

## I.     **BACKGROUND**

Plaintiff, Ibrahim Niyazi Bodur, commenced this civil action in the United States District Court for the Southern District of New York against the Defendants by filing a Complaint on May 20, 2011 (Docket Entry ("DE") 1). Plaintiff asserts various causes of action in the instant matter against Defendants under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (hereinafter also referred to as "FDCPA") and the New York General Business Law, §349 (hereinafter also referred to as "NYGBL") as follows:

1.     15 U.S.C. §1692b, "Acquisition Of Location Information": "Any Debt Collector Communicating With Any Person Other Than The Consumer For The Purpose Of Acquiring Location Information About The Consumer Shall-";

2.     15 U.S.C. §1692d, "Harassment Or Abuse": "A Debt Collector May Not Engage In Any Conduct The Natural Consequence Of Which Is To Harass, Oppress Or Abuse Any Person In Connection With The Collection Of A Debt";

3.     15 U.S.C. §1692d(6): "Except As Provided In §804[15 U.S.C. §1692b], The Placement Of Telephone Calls Without Meaningful Disclosure Of The Callers Identity";

4.     15 U.S.C. §1692e, "False And Misleading Representations": "A Debt Collector May Not Use Any False, Deceptive Or Misleading Representation Or Means In Connection With The Collection Of Any Debt";

5.     15 U.S.C. §1692e(2)(a): "The False Representation Of The Character, Amount Or Legal Status Of Any Debt";

6.     15 U.S.C. §1692e(2)(b): "The False Representation Of Any Services Rendered Or Compensation Which May Be Lawfully Received By Any Debt Collector For The Collection Of A Debt";

7.    15 U.S.C. §1692e(5): "The Threat To Take Any Action That Cannot Legally Be Taken Or That Is Not Intended To Be Taken";

8.    15 U.S.C. §1692e(10): "The Use Of Any False Representation Or Deceptive Means To Collect Or Attempt To Collect Any Debt Or To Obtain Information Concerning A Consumer";

9.    15 U.S.C. §1692e(12): "The False Representation Or Implication That Accounts Have Been Turned Over To Instant Purchasers For Value";

10.    15 U.S.C. §1692f, "Unfair Practices": "A Debt Collector May Not Use Unfair Or Unconscionable Means To Collect Or Attempt To Collect Any Debt";

11.    15 U.S.C. §1692f(1): "The Collection Of Any Amount (Including Any Interest, Fee, Charge, Or Expense Incidental To The Principal Obligation) Unless Such Amount Is Expressly Authorized By The Agreement Creating The Debt For Permitted By Law";

12.    NYGBL §349, "Deceptive Acts And Practices Unlawful."

On June 20, 2011, Palisades filed an Answer to the Complaint with Affirmative Defenses denying all allegations of liability and damages (DE 7).  A true and correct copy of Palisades Answer to Plaintiff's Complaint with Affirmative Defenses is attached hereto and incorporated herein as Exhibit "A."

On June 28, 2011, Pressler filed an Answer to the Complaint with Affirmative Defenses denying all allegations of liability and damages (DE 9).  A true and correct copy of Pressler's Answer to Plaintiff's Complaint with Affirmative Defenses is attached hereto and incorporated herein as Exhibit "B."

Plaintiff propounded upon Palisades a First Set of Interrogatories and First Request for Production of Documents for Response.  Palisades responded to Plaintiff's First Set of Interrogatories and First Request for Production of Documents on August 11, 2011. A true and correct copy of Palisades Answers to Plaintiff's First Set of Interrogatories are attached hereto and incorporated herein as Exhibit "C."  A true and correct copy of Palisades Answers to

Plaintiff's First Request for Production of Documents are attached hereto and incorporated herein as Exhibit "D."

Plaintiff propounded upon Palisades a Second Set of Interrogatories and Second Set Request for Production of Documents for response. Palisades responded to Plaintiff's Second Set of Interrogatories and Second Request for Production of Documents on August 24, 2011. A true and correct copy of Palisades Answers to Plaintiff's Second Set of Interrogatories are attached hereto and incorporated herein as Exhibit "E." A true and correct copy of Palisades Answers to Plaintiff's Second Request for Production of Documents are attached hereto and incorporated herein as Exhibit "F."

Plaintiff propounded a First and Second Set of Interrogatories and a First and Second Set of Request for Production of Documents upon Pressler for response. Pressler made an omnibus response to Plaintiff's First and Second Set of Interrogatories and First and Second Request for Production of Documents on September 2, 2011. A true and correct copy of Pressler's omnibus response to Plaintiff's First and Second Set of Interrogatories and First and Second Request for Production of Documents are attached hereto and incorporated herein as Exhibit "G."

On August 12, 2011 the Deposition of Plaintiff was noticed and completed. Certain portions of the deposition transcript pertinent to Defendants' legal arguments are attached hereto as Exhibit "H".

Defendants Joint Motion for Summary Judgment is submitted to the Court on the basis that there is no genuine dispute as to any material facts and Defendants are entitled to judgment as a matter of law.

Defendants Joint Statement of Material Facts on Motion for Summary Judgment is attached hereto as Exhibit "I."

## II.   <u>FACTS</u>

By way of Complaint, Plaintiff claims that the debt at issue arose out of a transaction primarily for personal, family or household purposes and therefore is a debt as defined by the FDCPA. (See, DE 1, Paragraph 13).  Plaintiff asserts that the Defendants sued an individual by the name "Ibraham Bodur" under Index No. 1121715/05 in Civil Court, Kings County, New York, (also referred to herein as "State Court Action"), and obtained a judgment against Defendant/Debtor Ibraham Bodur on August 18, 2006 attaching a copy of the judgment to the Complaint as Exhibit "1". (DE 1, Exhibit 1).  Plaintiff's Complaint notes that the judgment listed the address of Defendant/Debtor Ibraham Bodur as 2270 Ocean Avenue, Apt. 1L, Brooklyn, NJ 11229. (DE 1, Paragraph 15).  Plaintiff alleges that starting sometime after 2005 through the present, that he began to receive alleged "harassing and intrusive calls" from the Defendants. (DE 1, Paragraph 17).  Plaintiff attaches a letter dated February 1, 2008 to the Complaint (DE 1, Exhibit 2), from Pressler addressed to 420 S. Chelsea Road, White Plains, New York 10603-1924 and claims that the letter was a "vague dunning" letter sent to the Plaintiff.   It should be noted that the correspondence was actually addressed to Defendant/Debtor Ibraham Bodur and not Plaintiff, Ibrahim Bodur.  Plaintiff claims in response to the letter and in response to alleged "harassing calls", Plaintiff spoke to Pressler's office to end the "wrongful targeting of him for the debt." Plaintiff memorialized the communication between him and Pressler which occurred on February 8, 2008 and is attached as Exhibit "3" to the Complaint. (DE 1, Exhibit 3).  (See DE 1, Paragraph 18).

Plaintiff claims that Defendants continued to forward letters and make phone calls to Plaintiff after the February 8, 2008 communication by and between Pressler and Plaintiff with "reckless indifference to the truth." (DE 1, Paragraph 19).  Plaintiff claims that on February 18,

2011, he received another "dunning" letter from Pressler with reference to the underlying

judgment (DE 1, Exhibit "1") seeking to collect $1,650.01 from Plaintiff.   It should be noted

that the February 18, 2011 correspondence was addressed to Defendant/Debtor "Ibraham Bodur"

at 420 S. Chelsea Road, White Plains, New York 10603-1924 and not Plaintiff, Ibrahim Bodur.

A true and correct copy of the February 18, 2011 correspondence is attached hereto as Exhibit

"J".

      Pursuant to Local Civil Rule 56.1, Defendants have prepared a Joint Statement of

Materials Facts on Joint Motion for Summary Judgment (attached hereto as Exhibit "I") which is

incorporated herein by way of reference as though set forth in full herein.

## III.   <u>STANDARD OF REVIEW</u>

      Summary Judgment should be granted where "there is no genuine issue as to any material

fact [such] that the moving parties are entitled to a judgment as a matter of law."  Fed.R.Civ.P.

56(c).  To prevail, the movant must "demonstrate the absence of a genuine issue of material

fact... The burden is then on the non-moving party to set forth specific facts raising a genuine

issue of fact for trial." <u>United States Ex Rel Romano v. N.Y. Presbyterian</u>, 426 F. Supp. 2nd 174,

177 (S.D.N.Y. 2006)(quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 324 (1986).

      A genuine issue of material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).  The burden of establishing that no genuine factual dispute is on the party seeking

summary judgment.  <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2nd Cir. 1994).  This

burden "may be discharged by "showing" – that is, pointing out to the District Court – that there

is an absence of evidence to support the nonmoving parties case." <u>Celotex</u>, 477 U.S. at 322.

Once a moving party meets this initial burden, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in their favor." Brown v. Henderson, 257 F. 3d 246, 252 (2d Cir. 2001).  Conclusory allegations, conjecture and speculation are insufficient to do so.  Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

To defeat summary judgment once a moving party has carried its burden under Rule 56, "the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1996)(quoting Fed.R.Civ.P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)(collection case).  "[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the claims or factual dispute be shown to require a jury or judge to resolve the parties differing versions of the truth at trial." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006)(quoting First Nat'l. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  However, where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if a nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993)(quoting Celotex, 477 U.S. at 322). (Internal quotation marks omitted).  Thus, "[A] Defendant moving for summary judgment must prevail if a Plaintiff fails to come forth with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allan v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996)(citing Anderson, 477 U.S. at 247-48).

## IV.   LEGAL ARGUMENT

As its name suggests, the FDCPA is part of comprehensive federal legislation aimed at preventing third-party debt collectors from using abusive and unfair tactics in collecting

consumer debts. See, 15 U.S.C. §1692 (setting out the purpose of Title 15 Ch. 41). The FDCPA

imposes civil liability upon debt collectors who mislead, harass or employ unfair tactics in

collecting debts from consumers for a creditor. The FDCPA, which was enacted to eliminate the

use of "abusive, deceptive and unfair debt collection practices by ... debt collectors," 15 U.S.C.

§1692(a),(e) sets out guide lines for debt collection. Plaintiff's Complaint alleges violations of

the FDCPA as more fully recited in Section I, "*Background*" herein. Nonetheless, Plaintiff has

failed to establish a genuine issue of material fact as to any of these claims and Defendants are

entitled to judgment as a matter of law.

> **A.    Plaintiff's Claim That Defendants Violated The Fair Debt Collection
> Practices Act and/or The New York General Business Law As A Result Of
> Phone Calls Made To Plaintiff Concerning The Alleged Debt At Issue Has No
> Basis In Law Or Fact.**

Plaintiff's Complaint (DE 1) alleges that Defendants violated the Fair Debt Collection

Practices and/or New York General Business Law, in part, through phone communications with

Plaintiff in an attempt to collect the alleged debt at issue. For example, Plaintiff's Complaint

alleges as follows:

> 17. Starting sometime after 2005 through the present, the Plaintiff in this
> action, Ibrahim Niyazi Bodur, has been receiving harassing and
> intrusive calls from the Defendants.

> \*            \*            \*

> 19. Pursuant to the above call, Pressler and Palisades were put on notice
> that they were pursuing the wrong man at the wrong address.
> However, the letters and calls did not stop. The Defendants proceeded
> to act with a reckless indifference to the truth. Mr. Bodur, on his home
> line, continues to receive hang-ups and harassing calls in an abusive
> tone demanding the erroneous debt.

(DE 1).

Notwithstanding Plaintiff's allegations that he was a recipient of "hang-ups and harassing calls in an abusive tone demanding this erroneous debt" Plaintiff testified in his deposition on August 12, 2011 as follows:

> Q. Lets start all over. Paragraph number 17 says that starting sometime after 2005 to present, meaning the date that you filed the Complaint, you received harassing and intrusive calls from the Defendants; isn't that correct?
>
> A. Yes, it is.
>
> Q. And you have testified that calls means phone calls; isn't that correct?
>
> A. Yes, it is.
>
> Q. And you would agree with me that the plural Defendants is referring to Pressler & Pressler and Palisades; isn't that correct?
>
> A. Yes, it is.
>
> Q. So I want to know if you have a specific recollection of receiving a phone call or phone calls from Palisades Collection?
>
> A. Not from Palisades, no.

See, Exhibit H attached hereto, P. 62, L. 3-23.

As a result of the sworn testimony of Plaintiff as reflected by the foregoing, it has been established that Palisades never made phone calls to Plaintiff nor did Palisades receive any phone calls from Plaintiff at all times material to Plaintiff's Complaint.

> Q. Now with regard to Paragraph number 19 you will see further down – just let me say that I understand that you did not see the Complaint prior to it being filed with the Court, I understand that.  With regard to Paragraph 19 further down it says, "Mr. Bodur on his home line continued to receive hang-ups and harassing calls in an abusive tone demanding this erroneous debt; isn't that what it says?
>
> A. Yes, that is what it says.

Q.   But you have already testified and agreed that the only call that you
     recollect receiving with regard to the debt at issue in this Complaint is a
     phone call you testified about originating in late 2005, early 2006; isn't
     that correct?

A.   That is correct with respect to the communication that I had with any
     individual. I did have some hang-ups that I cannot identify.

Q.   So to be fair as you sit here today you do not know if any hang-up calls
     were made to you by Pressler & Pressler; is that correct?

A.   That is correct.

Q.   And certainly you do not know if any hang-up calls were made by
     Palisades Collection, LLC, is that correct?

A.   That is correct.

See, Exhibit H, P. 93, L. 4-25 and P. 94, L. 1-9.

                    *              *              *

Q.   The only phone call – I am sorry strike that.  The only calls that we are
     referring to that that paragraph refers to is the late 2005, early 2006
     phone call; isn't that correct?

A.   Yes.

Q.   Ok.  So it really would be a call from Pressler & Pressler, not calls from
     Defendants; isn't that correct?

A.   Correct.

Q.   Now you use the language harassing and intrusive, what facts do you
     have to support your description of that phone call being harassing and
     intrusive?

A.   At the very beginning of the call, the person started professionally to
     my recollection.

Q.   State that again.

A.  At the beginning of the call the person on the phone started professionally. When I indicated that I expect this or strongly believe that this is a mistaken identity situation, they did not want to believe me. They went a little bit further ahead and kept pushing the issue. They asked all kinds of intrusive questions. They would not accept the simple fact that by that time we had established that, usually what happens is that I provide my last 4 digit of my social security number and the other individual sometimes provides the last 4 digits of a social security number. If there is no match, generally we end up saying that is it, you're not the right person. This person pushed a little bit more, didn't want to believe me.

Q.  Is that --.

A.  That is all.

Q.  That is how you answer the question?

A.  I believe so, yes.

See, Exhibit H, P. 69, L18-25; P. 70, L2-25; P. 71, L2-12.

Assuming arguendo that Pressler & Pressler was responsible for only one phone call referred to by Plaintiff in his deposition testimony with reference to the alleged debt at issue in the Complaint, such does not constitute "harassing" behavior as contemplated by the Fair Debt Collection Practices Act or any of the provisions within the Fair Debt Collection Practices Act that Plaintiff's Claims the Defendants violated including, but not limited to 15 U.S.C. §1692d. See, e.g., Prewitt v. Wolpoff & Abramson, LLP, No. 05-cv-725 S(F) 2007 WL 841778, at *6-7 (W.D.N.Y. March 10, 2007)(denying summary judgment when Defendant had called Plaintiff at least once per day, and sometimes multiple times per day, for a 200-day period); Udell v. Kan. Counselors, Inc., 313 F. Supp. 2d 1135, 1144 (D.Kan. 2004)(granting summary judgment for Defendant when Defendant had called Plaintiff 4 times over 7 days); cf, Shiverton v. Fed. Fin. Group, Inc., 399 F. Supp. 2d 96 (D.Conn. 2005)(denying summary judgment when Defendant repeatedly called Plaintiff after Plaintiff had hung up); Aklwadi v. Risk Mgmt. Alternatives, Inc.,

236 F. Supp. 2d 492, 505-06 (D.N.D 2004)(denying summary judgment when Defendant made between 26 and 28 phone calls to Plaintiff's residence during a two-month interval, including on one instance making three phone calls in a five hour period).

Thus, based upon the case law, the one and only phone call Plaintiff believes he received from Pressler cannot constitute "harassment" as contemplated by any provisions of the Fair Debt Collection Practices Act and/or New York General Business Law.  Moreover, with reference to the substance of the phone call, as reflected by the above referenced deposition questions and answers, Plaintiff has not be able to articulate any facts which constitute harassment or abuse, false or misleading representations or any other unfair practices as contemplated by the Fair Debt Collection Practices Act and/or New York General Business Law.

Further, Plaintiff has produced no evidence to substantiate his recollection as shown that Pressler was even responsible for the one and only phone call Plaintiff received in late 2005 or early 2006 concerning the debt at issue.  He testified as follows:

> Q.  So I understand you as you sit here today, your sworn testimony is the phone call you received late 2005, early 2006 you have a specific recollection that with regard to the discussion in that phone call, the person identified themselves as being from Pressler & Pressler?
>
> A.  Yes.
>
> Q.  Now, you have no records from Verizon to support that allegation; isn't that correct?
>
> A.  That is correct.
>
> Q.  And you have no recording of the discussion during that phone call; isn't that correct?
>
> A.  That is correct.
>
> Q.  And you did not make any notes contemporaneous with that phone call or after that phone call concerning that phone call; isn't that correct?

A.   That is correct.

Q.   So other than your testimony today that it is your belief the phone call originated from Pressler & Pressler, you have no other supporting documentation or communications to support that; isn't that correct?

A.   That is correct.

See, Exhibit "H," P. 67, L. 21-25 and P. 68, L. 2-24.

Such conclusory allegations are insufficient to survive summary judgment.  See, Fashakin v. Nextel Commc.'ns, 2009 W.L. 790350, at *1 (E.D.N.Y. Mar. 25, 2009).  In Fashakin, Supra, the debtor accused the debt collector of multiple FDCPA violations, including calling the debtor repeatedly and at odd hours regarding an alleged debt.  Fashakin, Super, 2009 W.L. 790350 at *4.  In particular, the debtor insisted that the debtor collector made phone calls to her "morning and night" Ibid.  Despite this assertion, the debtor could not produce any evidence, other than her affidavit, to support such a claim.  Id.  The Fashakin, Supra Court granted summary judgment in favor of the debt collector.  Id.  The Court emphasized that because the Affidavit "[did] not support facts that are either specific or supported, "the evidence was not sufficient to defeat a Motion for Summary Judgment."  Id.

Based upon the foregoing sworn testimony of the Plaintiff himself, and the presentation of no other supporting evidence during the discovery phase in the instant case, Plaintiff's allegation that Pressler & Pressler was responsible for the one and only phone call testified to in Plaintiff's deposition which allegedly occurred in late 2005 or early 2006 should be discounted as it is shear speculation and not cooberated by any evidence.

The only other phone communication between Pressler and Plaintiff was a phone call initiated by Plaintiff which occurred on February 8, 2008.  Plaintiff made notes contemporaneous

with that telephone conversation which are reflected in Exhibit 3 to Plaintiff's Complaint (DE 1,

Exhibit 3).  There is nothing contained in the contemporaneously prepared notes by Plaintiff

which could possibly constitute a violation of the Fair Debt Collection Practices Act and/or the

New York General Business Law.  Further with regard to the substance of the phone

conversation itself, Plaintiff testified to the same as follows:

> Q.  This note, I want to be clear, the hand written note –

> Mr. Greystone:  Exhibit 3 to the Plaintiff's Complaint.

> Q.  Is that a true and accurate representation of what went on in the conversation?

> A.  Yes, it is.

> Q.  And I am looking at it, I am going to read it just to be clear, it says the date and has a time and its got a number which I believe is Pressler's number.  And its got the name Dave and says Pressler & Pressler and then it says I provided last 4 digits of my Social Security Number and DOB does not match with the records. They will remove my address and phone from the records?

> A.  Correct.

> Q.  And that is the notes that you took at that time?

> A.  Yes.

> Q.  Was there any harassing language or any language that you considered out of place during the conversation?

> A.  It was, it started very professional.  He did, Dave, this person went on a little bit further insisting and I do consider it as some form of harassing, "are you sure it is not you." Like I went in when it started it was fine. I said I am expecting this to be a misidentification situation.  I got this letter from you telling me to call.  I am calling you, can you help me. In fact, I said I am trying to help you too.  If you spend more time going after the wrong people, you are going to waste resources of your own as well. So it started well in that respect.  But then he insisted like are you sure you done know anybody with a similar names that could be the owing person.  That became a little bit insistent but it was not terribly horrible.

Q. So that is what you consider to be the harassing –
A. Right.

Q. That he asked you a couple of times is it possible that you might know somebody with that name?

A. Right, right.

Q. He did not use any bad language?

A. No.  He did not use any unacceptable language.

See, Exhibit "H", P. 159, L. 22-25; P. 160, L. 2-25; P. 161, L. 2-25 and P. 162, L. 2-4.

Assuming arguendo that the Court accepted that it was Pressler who made the one and only phone call in 2005 or early 2006 as testified to by Plaintiff in his deposition concerning the alleged debt at issue, one phone call is not excessive.  Moreover, it was neither harassing or abusive as Plaintiff has failed to provide any facts during his deposition specifically concerning what the caller said to Plaintiff as harassing or abusive.  Moreover, Plaintiff's own deposition testimony indicates that at the time he received the phone call, the individual making the phone call identified themselves as from Pressler.  Therefore, Plaintiff can not claim that he received a phone call from Pressler & Pressler with regard to the alleged debt at issue without meaningful disclosure of the caller's identity in violation of the Fair Debt Collection Practices Act.  Finally, Plaintiff has not been able to articulate during that alleged phone call, what false or misleading representations were made by the caller.  Therefore, to the extent the claims made in Plaintiff's Complaint concerning various violations of the Fair Debt Collection Practices Act and/or New York General Business Law are premised on "phone communications" made by the Defendants, all claims in that regard must be dismissed.

**B.    The Correspondence Received From Pressler Did Not Violate The Fair Debt Collection Practices Act and/or New York General Business Law.**

The remaining basis for the alleged claims in Plaintiff's Complaint (DE 1) rely on a number of documents Plaintiff received at Plaintiff's address.  With specific reference to Palisades, Plaintiff testified as follows:

> Q. I am actually asking you the questions.  You're not allows to pose questions to me.  Let me rephrase my question.  Would you agree with me Mr. Bodur, that you have no documents in your possession or attached to the Complaint addressed to you by Palisades Collection, LLC?
>
> A. That is correct.
>
> Q. And we have already established that Palisades Collection made no phone calls to you?
>
> A. That is correct.
>
> Q. Did you ever make any phone calls by the way to Palisades with reference to the claims you're making in this Complaint?
>
> A. I don't believe so.
>
> Q. Did you ever send any correspondence, any kind of written communication to Palisades with reference to the allegations in this Complaint?
>
> A. No.

*          *          *

See Exhibit H, P. 71, L. 24-25; P. 72, L. 2-22.

*          *          *

> Q. And you would agree with me that Palisades brought a suit against an individual whose name is not spelled the same as yours; is that correct?
>
> A. That is correct.

Q.  And that Palisades brought suit against an individual whose address
    you never lived at; is that correct?

A.  That is correct.

See Exhibit H, P. 73, L. 19-25; P. 74, L. 2-3.

Thus, it is established by Plaintiff's own sworn testimony that Palisades never sent any

written communications nor received any from Plaintiff.  Moreover, Plaintiff concedes that the

underlying State Court Action was filed on behalf of Palisades against another individual with an

address that did not belong to Plaintiff.

With reference to Pressler, correspondence was forwarded by Pressler to Plaintiff's

address at 420 S. Chelsea Road, White Plains, NY 10603-1924 and addressed to the

Defendant/Debtor in the underlying State Court Action "Ibraham Bodur" along with a copy of

the Judgment rendered in the Civil Court of the City of New York, County of Kings, Index No.

112171/05 in the matter of Palisades Collection, LLC v. Ibraham Bodur indicating, in part, an

address of 2370 Ocean Avenue, Apt. 1L, Brooklyn, NY 11229.  (DE 1, Exhibits 1 and 2 attached

thereto). A second letter was sent to the address of Plaintiff by Pressler on February 18, 2011

addressed to the Defendant/Debtor in the underlying State Court Action, Ibraham Bodur, and

indicating the full caption of said action enclosing a "Notice to Judgment or Obligor."  (See

Exhibit "J.").

When questioned concerning the documents and the disclosures, Plaintiff testified as

follows:

Q.  Now that Paragraph is in reference to the Exhibit 1, which we just
    discussed a moment ago, the Judgment documents; isn't that correct?

A.  Yes, it is.

Q.   It was a judgment document rendered in the Civil Court, Kings County, New York, Index No. 112171/05 obtained on August 18, 2006; isn't that correct?

A.   That is correct.

Q.   And the name identified as the Defendant on that document is what?

A.   The name is Ibrahim Bodur?

Q.   And the spelling of Ibrahim on the judgment document on the Complaint is spelled how and please say it out loud?

A.   Ibraham.

Q.   And the spelling of your first name sir, is spelled how?

A.   Ibrahim.

Q.   Notwithstanding the fact the last name of the Defendant on Exhibit 1 is spelled the same way your last name is, the first name is not; would you agree with that?

A.   That is correct.

Q.   Now at the bottom of the document do you see that an address has been recited for the Defendant identified in the judgment document?

A.   Yes, I do see it.

Q.   And that address is 2370 Ocean Avenue, Apt. 1L, Brooklyn, NY; correct?

A.   That is correct.

Q.   And you testified earlier in this deposition that you never resided at that address; is that correct?

A.   That is correct.

See Exhibit H, P. 37, L. 24-25; P. 38, L. 2-25; P. 39, L. 2-13.

Q.   And just so I understand it now, at this point other than the fact that you received a copy of Exhibit 1 at your address as your counsel has testified to in this deposition, in addition to your discussion with a bank officer concerning the document, you have no other facts that lead you to believe that the document referred to you; isn't that correct?

A.   That is correct.

See Exhibit H, P. 48, L. 7-15. ("Exhibit 1" recited to immediately above refers to DE 1, Exhibit 1).

Q.   Moving to Paragraph 21, please read that Paragraph. Let me know when you are done.

A.   I have read it.

Q.   It says that I attached to the letter, I assume that you are referring to the February 18, 2011 letter that you produced today as Bodur 5, that you panicked and feared your assests would be frozen; is that correct?

A.   That is correct.

Q.   You would agree with me that the February 18, 2011 correspondence is addressed to an individual whose spelling of his name is not the same as your; isn't that correct?

A.   That is correct one letter is spelled differently.

Q.   But it is not spelled the same as yours; isn't that correct?

A.   That is correct.

Q.   Were any of your assets ever frozen?

A.   No.

Q.   In fact at no time, with reference to the claims made in your complaint, have any of your bank accounts ever been frozen or any of your banks contacted with regard to freezing assets concerning this debt; isn't that correct?

A.   I can't answer that question obviously I don't know what communications my bank may have received or did not receive.

Q.   But you're not aware of any; is that correct?

        A.   That is correct.

See Exhibit H, P. 94, L. 16-25; P. 95, L. 2-25; P. 96, L. 2.

*           *           *

        Q.   With regard to the earnings you were receiving as a salary, they have never been garnished at any time with reference to the debt at issue in this Complaint; is that correct?

        A.   That is correct.

See Exhibit H, P. 96, L. 12-17.

*           *           *

        Q.   You will agree with me that all of the documentation that is being produced today is in the spelling of a mans name that is not the same as yours; isn't that correct?

        A.   Yes, that is correct.

        Q.   With reference to an address that you know you never lived at?

        A.   That is correct.

See Exhibit H, P. 99, L. 13-20.

        Q.   With reference to the judgment rendered against the man whose name is not spelled the same as yours, it is an address that you never lived at; correct?

        A.   That is correct but multiple letters were sent to my correct address demanding the payment on the same debt.

        Q.   Demanding payment from a man whose name is not the same yours; isn't that correct?

        A.   Yes, that is correct.

See Exhibit H, P. 100, L. 2-10.

       An examination of Exhibit 1 and 2 attached to Plaintiff's Complaint (DE 1, Exhibits 1 and 2 attached thereto) as well as Exhibit "J" attached hereto, reveals that in every instance the

name referred to was that of the Defendant/Debtor in the underlying State Court Action, Ibraham

Bodur. Moreover, the Judgment Document itself (DE 1, Exhibit 1 attached hereto), contained an

address for the Defendant/Debtor in the underlying State Court Action at which Plaintiff in the

instant action never resided.  Based on Plaintiff's own testimony, when he received the February

1, 2008 (DE 1, Exhibit 2 attached thereto) correspondence which contained the Judgment Notice

(DE 1, Exhibit 1 attached hereto), he recognized that the name of the Defendant/Debtor was not

the same as his and the address associated with the Defendant/Debtor was an address at which he

had never resided.  Clearly, Pressler was not attempting to collect a debt from Plaintiff in the

instant matter.  Pressler was attempting to collect a debt from Defendant/Debtor, Ibraham Bodur.

Notwithstanding the fact the name on the Judgment Notice did not match Plaintiff's nor did the

address associated with the Defendant/Debtor in the underlying State Court Action, Plaintiff

contacted Pressler as reflected by Exhibit 3 to Plaintiff's Complaint and in Plaintiff's own

handwriting Plaintiff states that Pressler agreed the information provided, "does not match with

the records" and "he will remove my address and phone from the records."  (DE 1, Exhibit 3

attached hereto).  Therefore, Plaintiff had no reason to believe the second and only other written

communication received at his address on February 18, 2008 (addressed to the

Defendant/Debtor) was an attempt to collect a debt from him.  Although, Plaintiff received no

further communications from Pressler after February 18, 2008 he still filed a Complaint in the

instant matter on May 20, 2011.  (DE 1).  If Plaintiff was a target for collection purposes on the

alleged debt in the instant matter, he would have received further written as well as telephonic

communications concerning the debt at issue between February 18, 2008 and the date he filed the

Complaint in May, 2011.  Yet, this never occurred.

The central theme of Plaintiff's case directed against Defendants is that Defendants attempted to collect a debt Plaintiff did not own through written and telephonic communications. See, DE 40 at ¶¶ 27-30. Plaintiff was aware that Defendants were attempting to collect a debt from Defendant/Debtor Ibraham Bodur, as reflected in the Complaint in the underlying State Court Action. Notwithstanding this knowledge, it appears to be Plaintiff's contention that the FDCPA was nonetheless violated by Defendants, specifically 15 U.S.C. §1692d, §1692e(2)(A), §1692e(2)(B), §1692e(5), §1692e(10) and §1692f. Plaintiff's contentions are misguided.

As its name suggests, the Fair Debt Collection Practices Act is part of comprehensive Federal Legislation aimed at preventing third-party debt collectors from using abusive and unfair tactics in collecting consumer debts. See, 15 U.S.C. §1692 (setting out the purpose of title 15, Ch. 41). The FDCPA imposes civil liability upon debt collectors who mislead, harass or employ unfair tactics in collecting debts from consumers for a creditor. To appreciate fully the broad reach of the FDCPA, an analysis of the defined terms used by Congress in the FDCPA is worthwhile. The FDCPA defines "consumer" as any person who owes or allegedly owes a debt. 15 U.S.C. §1692a(3). A "debt" in turn is defined as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the goods or services which are the subject of the transaction are primarily for personal, family or household purposes. 15 U.S.C. §1692a(4). It is worthwhile noting, that nowhere in the record other than Plaintiff's Complaint does Plaintiff specifically produce any documentation providing a basis for his contention that the debt at issue in the instant complaint meets the definition of "debt" under the FDCPA. Under the FDCPA, a "creditor" is any person who extends credit creating a debt or any person to whom a debt is owed. 15 U.S.C. §1692a(4). "Debt Collectors" include any person who uses the instrumentality of interstate commerce or the mails in any business, the principal purpose of

which is debt collection, or who regularly collects or attempts to collect debts owed to another. 15 U.S.C. §1692a(6).

The FDCPA's provisions fall into four basic categories. First, the FDCPA restricts the number and manner of communications that the debt collector may have with the debtor or third-parties about the debt. Second, debt collectors are prohibited from making false statements or misleading a debtor. Third, debtors may not be subjected to abusive or harassing tactics by debt collectors. Finally, debt collectors are required to make certain disclosures to debtors and are prohibited from otherwise using unfair activities to attempt to collect on debt.

The provisions of 15 U.S.C. §1692d of the FDCPA contain general prohibitions on false and misleading statements. For instance, the FDCPA specifically prohibits a debt collector from representing or implying that he is an officer or agent of any government. 15 U.S.C. §1692d(1). §1692d also prohibits a debt collector from misrepresenting the character, amount or status of any debt or the compensation that may be received by the debt collector to satisfy any debt. For instance, if a creditor provides inaccurate information about the amount of the debt to its attorney who unwittingly includes the false information in a communication to the debtor, the attorney may have violated the FDCPA by misstating or mischaracterizing the debt. This section also prohibits a debt collector from threatening to take any action which cannot lawfully be taken. 15 U.S.C. §1692c(5). To determine whether a statement is actionable as misleading under the FDCPA, courts have traditionally applied the "least sophisticated consumer" standard. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985). Essentially, the Court will examine whether the statement made by a debt collector would mislead the least sophisticated consumer.

The full text of the section referred to in Plaintiff's Complaint or 15 U.S.C. §1692d,

"Harassment or abuse," states as follows:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

1. The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
2. The use of obscene or profane language or language the natural consequence of which is to abuse to hearer or reader.
3. The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to person meeting the requirements of section 603(f) or 604(3) of this act [15 U.S.C. §1692a(f) or §1692(b)(3)].
4. The advertisement for sale of any debt to coerce payment of the debt.
5. Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
6. Except as provided in §804 [15 U.S.C. §1692b], the placement of telephone calls without meaningful disclosure of the callers identity.
7. The key language in 15 U.S.C. §1692(d) relevant to the instant matter are the words, "a debt collector may not engage …" in any of the subsections of 15 U.S.C. §1692d without violating the FDCPA.

An example of a violation of 15 U.S.C. §1692d can be found in <u>Cirkot v. Diversified Fin.</u>

<u>Sys.</u>, 839 F. Supp. 1941 (D. Conn, 1993), where a debt collection law firm used a special

investigator who placed a hand written note in the debtors mailbox stating, "urgent – open

immediately" and "my special agents will remain in your area to collect. Believe me." The

Court found that the note was threatening, harassing and abusive in its attempts to collect a debt

from the debtor and was precisely the type of conduct that the FDCPA was designed to prevent.

Defendants Statement of Material Facts and the evidence supporting those material facts

attached hereto as Exhibits clearly support Defendants defense and position they did not engage

in any conduct directed toward the Plaintiff in the underlying State Court Action. As Defendants did not engage in any conduct toward the Plaintiff applicable to any of the subsections contained in 15 U.S.C. §1692d, neither can be liable to Plaintiff for a violation under 15 U.S.C. §1692d.

Plaintiff also claims that Defendants violated the FDCPA specifically under 15 U.S.C. §1692e(2)(A), §1692e(2)(B), §1692e(5) §1692e(10).  The foregoing alleged violations fall within 15 U.S.C. §1692e entitled, "False or misleading representations".  It states in relevant part as follows:

> 1.  A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \*         \*         \*
>
> 2.  The false representation of – A) the character, amount or legal status of any debt; of B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> \*         \*         \*
>
> 5)  The threat to take any action that can not legally be taken or that is not intended to be taken.
>
> \*         \*         \*
>
> 10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

The critical language contained in 15 U.S.C. §1692e, are the words "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  This section, like all sections contained within the FDCPA requires some form of proactive conduct on behalf of the debt collector in an attempt to collect a debt.  In this instance, a debt collector who uses false, deceptive or misleading representations or means in

connection with attempting to collect a debt from the consumer.  An example of a 15 U.S.C. §1692e(2)(A) violation would be as follows:

In Dutton v. Wolhar, 809 F. Supp. 1130 (D. Del. 1992), partial summary judgment was entered for the Plaintiff on her claim that an attorney who met the definition of a "debt collector" under the FDCPA, misrepresented the character or legal status of an alleged debt when the attorney addressed a letter to Plaintiff received at her home informing her that she owed $422.93 to a creditor even though the debt had actually been incurred by Plaintiff's mother.  The representation was that Plaintiff was legally obligated to pay the debt of her mother which was a false representation of the character or legal status of the debt.

An example of a violation under 15 U.S.C. §1692e(5) can be found in United States v. National Fin. Servs., Inc., 820 F.Supp. 228 (D. MD. 1993), where the Government claimed a debt collector sent letters to debtors stating their accounts would be transferred to an attorney if unpaid after a date specified.  In reality the debt collector and attorney had no procedure for filing suit and did not discuss the merits of filing suit against any debtors in particular.  Summary Judgment was granted because the collection letters threatened debtors with legal action even though the debt collector did not intend to file suit against the debtors at the time the notices were sent.

An example of a 15 U.S.C. §1692e(10) violation can be found in Martin v. Sands, 62 F.Supp. 2nd 96 (D. Mass, 1999), where the plaintiff was granted Summary Judgment on the basis that collection notices sent by the debt collector stated that an attorney would be involved in collecting the recipients debts event though in reality the named law firm in the collection notices was not meaningfully involved in collecting accounts.

In each instance, there was some form of proactive conduct either by the debt collector agency or debt collector law firm in which the courts found false or misleading in their respective attempts to collect debt.  In the instant case, there was no proactive conduct by Defendants with reference to Plaintiff or the alleged debt at issue.  This FDCPA section is inapplicable to Defendants as Defendants did not employ any conduct, much less false or misleading representations, in an attempt to collect a debt from Plaintiff.

The "Unfair practices" section of the FDCPA falls within 15 U.S.C. §1692f.  It states as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

Without limiting the general application of the foregoing, the following conduct is a violation of this section:

1. The collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
2. The acceptance by a debt collector from any person of a check or other payment instrument post-dated by more than five (5) days unless such person is notified in writing of the debt collectors intent to deposit such check or instrument not more than ten (10) or less than three (3) business days prior to such deposit.
3. The solicitation by a debt collector of any post-dated check or other post-dated payment instrument for the purpose of threatening or instituting criminal prosecution.
4. Depositing or threatening to deposit any post-dated check or other post-dated payment instrument prior to the date on such check or instrument.
5. Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.
6. Taking or threatening to take any non-judicial action to effect dispossession or disablement of property if –
   A)  there is no present right to possession of the property claim as collateral through an enforceable security interest;
   B)  there is not present intention to take possession of the property; or

     C)    the property is exempt by law from such dispossession or disablement.

7.    Communicating with a consumer regarding a debt by postcard.

8.    Including any language or symbol, other than the debt collectors address, on any envelope when communicating with a consumer by use of the mails or by telegraph, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

An example of a violation of 15 U.S.C. §1692f(1) can be found in <u>Newman v. Chackrite Cal.</u>, 912 F.Supp. 1354 (ED CA, 1995), where debtors were granted summary judgment on their claim that a law firm acting as a debt collector had sent collection letters which demanded payment of a $85 "legal notice" fee, while another demanded "legal consideration for covenant not to sue," both asserting that the debtors were subject to potential liability for additional sums including travel damages.  The Court found that the letters demanded excessive fees and misrepresented amounts that the debtors owed as well as the nature of the charges in violation of §1692f(1).

The entire purpose of the "Unfair practices" section of the FDCPA, like the FDCPA itself, is to prohibit debt collectors from using various unfair or unconscionable means to collector or attempt to collect a debt from a consumer.  Again, the key language in this section is, "A debt collector may not use ..." Defendants never attempted to engage in any proactive conduct which upon circumspection could be found as either unfair or an unconscionable means to collect or attempt to collect a debt when the Plaintiff was never the target of debt collection in the first instance.

The United States Supreme Court has defined an unfair practice as any practice that offends public policy, or practice which while lawful is immoral, unethical, oppressive or unscrupulous, or which causes substantial injury to the consumer.  <u>FDC v. Sperry & Hutchinson Co.</u>, 405 U.S. 233, 244-245 n.5 (1972).

In order for there to be any liability under the Fair Debt Collection Practices Act and/or the New York General Business Law, the trier-of-fact would first have to find that Plaintiff in the instant case was a target of debt collection. Clearly based upon the facts, the documentation presented and the testimony of Plaintiff himself, reveals Plaintiff was never the target of debt collection by either Defendant. Therefore, as Plaintiff cannot present to the trier-of-fact, any independent evidence other than conclusory allegations to support a claim that the February 1, 2008 correspondence and the February 18, 2008 correspondence were an attempt to collect a debt from him, summary judgment must be entered in favor of the Defendants.

### C.  In Order To Proceed Under the Fair Debt Collection Practices Act, Plaintiff Must Be A Defined "Consumer" And The "Debt" Must Be A Defined Consumer Obligation Which Is Not Present In The Instant Case.

As its name suggests, the Fair Debt Collection Practices Act is part of comprehensive federal legislation aimed at preventing third-party debt collectors from using abusive and unfair tactics in collecting consumer debts. The FDCPA imposes civil liability upon debt collectors who mislead, harass or employ unfair tactics in collecting debts from consumers for a creditor. To appreciate fully the broad reach of the FDCPA, an analysis of the defined terms used by Congress in the FDCPA is worthwhile. The FDCPA defines "Consumer" as any person who owes or allegedly owes a debt. 15 U.S.C. §1692a(3). A "Debt" in turn is defined as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the goods or services which are the subject of the transaction are primarily for person, family or household purposes. 15 U.S.C. §1692a(4). Nowhere in the record other than as stated in Plaintiff's own Complaint does Plaintiff specifically produce any documentation providing a basis for its contention that the debt at issue in the instant Complaint meets the definition of "Debt" under the FDPCA. Plaintiff testified as follows:

Q.  With regard to Exhibit 1 attached to your Complaint, Sir, it is your position that the Judgment rendered in that case is not rendered against you?

A.  Correct.

Q.  And at the time that you received notice of a judgment you knew that; isn't that correct?

A.  That is what I expected.

Q.  The Judgment is with reference to an account that did not belong to you, isn't that correct?

A.  Correct.

Q.  Therefore, you are not making any consumer purchases with regard to that account because it did not belong to you; isn't that correct?

A.  I was not making any purchases on that particular account.

Q.  Because it did not belong to you; isn't that correct?

A.  That is correct.

See Exhibit H, P. 36, L. 19-25; P. 37, L. 2-16.

In Order for Plaintiff to proceed under the Fair Debt Collection Practices Act it is an absolute requirement, in part, that the debt at issue meet the definition of "Debt" as defined by 15 U.S.C. §1692a(5).  As Plaintiff has provided no evidence that the debt at issue arose out of a transaction which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes whether or not said obligation has been reduced to judgment, he therefore has no standing to bring the instant action.

**D.    Palisades Can Not Be Held Liable For The Allegations Made In Plaintiff's Complaint.**

Pursuant to 15 U.S.C.§1692a(6), the term "Debt Collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts, or who regularly collects or attempts to collect directly or

indirectly, debts owed or due or asserted to be owed or due another period. …

15 U.S.C. §1692a(6) "Definitions."

In order for a Plaintiff to assert an action against the Defendants under the Fair Debt

Collection Practices Act, he must show that Defendants meet the definition of debt collector.  In

the instant matter, Palisades does not meet the definition of debt collector in relation to the

Plaintiff.  As reflected within the argument section herein, the only connection Palisades has with

the instant case, is being named as a Plaintiff in the underlying State Court Action against a

Defendant/Debtor who is not Plaintiff in the instant case.  Palisades did not, nor did it receive,

any telephone communications from Plaintiff.  Palisades did not, nor did it receive, any written

communications from Plaintiff.  Palisades never attempted to collect a "debt" (as defined by the

FDCPA) as a "Debt Collector" (as defined by the FDCPA) from the instant Plaintiff. Therefore,

Palisades has participated in no conduct whatsoever which could be presented to the trier-of-fact

for consideration of Plaintiff's claims of liability and damages and, therefore, summary judgment

must be entered in Palisades favor.

## V.   **CONCLUSION**

For all the reasons stated herein, Defendants are entitled to Summary Judgment in the

instant case.

**WHEREFORE**, Defendants', Palisades Collection, LLC and Pressler & Pressler, LLP,

hereby request this Honorable Court grant their Joint Motion for Summary Judgment, Dismiss

Plaintiff's Complaint with Prejudice and enter a Judgment in their respective favor and against

Plaintiff along with attorney's fees, costs and any other relief deemed just and proper.

Respectfully submitted:

**SPECTOR GADON & ROSEN, P.C.**

Dated: <u>October 28, 2011</u>          By:  <u>/s/ Jonathan J. Gresystone</u>
                                         Jonathan J. Greystone, Esquire
                                         1635 Market Street, 7th Floor
                                         Philadelphia, PA 19103
                                         (215) 214-8927(215) 241-8844 (fax)
                                         jgreystone@lawsgr.com

                                         Counsel for Defendant,
                                         Palisades Collection, LLC

                                                   -      and –

                                         **PRESSLER & PRESSLER, LLP.**

Dated: <u>October 28, 2011</u>          By: <u>/s/ Mitchell Williamson</u>
                                         Mitchell Williamson, Esquire
                                         7 Entin Road).
                                         Parsippany, NJ 07054
                                         (973) 753-5100/(973) 753-5353 (fax)
                                         mwilliamson@pressler-pressler.com

                                         Counsel for Defendant,
                                         Pressler & Pressler, LLP