19RYBODC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IBRAHIM NIYAZI BODUR,

4                  Plaintiff,

5         v.                              11 Civil 3475 (AJP)

6    PALISADES COLLECTION, LLC,
     and PRESSLER & PRESSLER,
7    LLC.,

8                  Defendants.

9    ------------------------------x

10

11

12

13

14                                       September 27, 2011
                                         3:15 p.m.
15

16

17

18

19   Before:

20            HON. ANDREW J. PECK,

21                                       Magistrate Judge

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

19RYBODC

APPEARANCES

JESSE D. LANGEL, ESQ.,
Attorney for Plaintiff
    225 Broadway
    New York, New York


SPECTOR GADON & ROSEN, P.C.
Attorneys  for Defendant Palisades Collection, LLC
    1635 Market Street
    Philadelphia, Pa
JONATHAN J. GREYSTONE, ESQ.,(APPEARING BY TELEPHONE)
    Of counsel


PRESSLER AND PRESSLER
Attorneys  for Defendant Pressler and Pressler
    7 Entin Road
    Parsippany, New Jersey
MICHELL L. WILLIAMSON, ESQ.,
    Of counsel


- - -


    THE COURT:  Okay.  We are here at plaintiff's request by its letter of September 26 dealing with the deposition of somebody from defendant Pressler and Pressler.

    So, Mr. Williamson, what is the problem from the defendant's point of view?

    MR. PRESSLER:  Well, there are a number of things and first and foremost the letter is somewhat deceptive in that the initial date of September 16 occurred -- I was out of town the entire week that's why I didn't -- I didn't refuse to appear at that time, I was out of town on business from Monday afternoon until Friday night.

19RYBODC

```
 1              The second deposition was scheduled for the second day
 2    of Rosh Hashanah, which I observed, as does Mr. Greystone.
 3              THE COURT:  Do you folks know how talk to each other
 4    without --
 5              MR. PRESSLER:  Yes.  But let's step back.  As far as
 6    in terms -- it wasn't a matter I'm not coming and that's the
 7    end of it, he was, he was, he was advised of that in the
 8    letter.
 9              The secondary point the deposition notice and the
10    request for documents is, when I say expansive, that's an
11    understatement.
12              This is a case that revolves around --
13              THE COURT:  Hand me the document request and notice,
14    please.
15              MR. PRESSLER:  If I can approach, your Honor.
16              (Handing to the court)
17              (Pause)
18              Let's take the 30(b)(6) aspect -- okay.  This is not a
19    30(b)(6) notice as such, so perhaps it's defective in that.
20              As to the rest, -- let's turn this around.
21              What documents do you really want?
22              The problem with this is that when you start doing
23    anything that's got to do with plaintiff's complaint, it's not
24    a form that usually works well.  So let's start with
25    Mr. Langel.
```

19RYBODC

1          Basically, what do you need from the defendant here?

2          MR. LANGEL:  Your Honor, I need anything that relates

3    to the attempts that were made to collect this debt from my

4    client, who is a third party --

5          THE COURT:  Is that the only thing you want their

6    material about your client?

7          MR. LANGEL:  I want their material and the material

8    relating to the underlying court files that --

9          THE COURT:  Only as to your client, so all this stuff

10   is read literally is not what you are looking for.

11         MR. LANGEL:  I would like to add, your Honor, that I

12   would also demand a materials relating to their defense that

13   this cause of action was a mistake which bears directly on the

14   issue of mistake.

15         THE COURT:  So limited as such --

16         MR. PRESSLER:  That's an issue I haven't raised.  Bona

17   fide error is not raised in our papers as a defense.

18         THE COURT:  Okay.

19         MR. PRESSLER:  This centers on, your Honor, and I

20   think it is crucial to put it in context, the fact as Mr. Bodur

21   has testified to or that he received a letter on or about

22   February 18, 2008.  As a result of that letter he called into

23   Pressler I think you have me confused with another Ibrahim

24   Bodur and he has been confused before.  He says that he has had

25   this problem with other companies.

19RYBODC

1     He was told you're right, you're not the guy, they

2   exchanged his information.  He said you're right, you're not

3   the guy, that's the end of it.

4     Mr. Bodur made the call into Pressler and Pressler on

5   February I believe it was the 18th or the 8th of 2008.

6     The next event was that a notice of judgment, the

7   annual notice of judgment in 2011, in February 2011 was sent

8   to -- that was on February 18 -- was sent to Mr. Bodur's

9   address, the plaintiff's address, addressed to the proper

10   defendant, not Mr. Bodur, but it was sent to his address.

11   That's it.  That's all the contact there was.  There was no

12   other contact.

13     Mr. Langel called my office or sent a letter to my

14   office on March 3.  He was advised soon you're right, it's the

15   wrong guy, I'm sorry the address got into the file.

16     The next thing that happened we got a demand letter

17   for $20,000 in damages.

18     Now, Mr. Bodur also testified at his deposition that

19   he knew there was no judgment against him because he checked

20   his credit report.  This is a judgment that goes back several

21   years.  He also, which makes it also somewhat challenging, the

22   judgment in this case was $1,1OO in the lower court and Mr.

23   Bodur -- Mr. Langel's position that Mr. Bodur came close to

24   having a heart attack and has extremely serious medical

25   problems due to that.

19RYBODC

```
 1              You have to understand that Mr. Bodur makes over
 2     $250,000 a year and has over $100,000 in assets in his bank, so
 3     the idea that a 1,100 judgment would cause him that kind of --
 4     if it was true, if he truly believed it, but he checked and
 5     within two weeks he knew it wasn't against him because his
 6     attorney called him.
 7              So there is no dispute that the letter was sent, there
 8     is no dispute that it went to his address.
 9              THE COURT:  So what are we fighting about?
10              MR. LANGEL:  Your Honor, I'm fighting for minimal
11     damages afforded to my client under the strict liability
12     provision statute, which is $1,000 statutory damages.  I
13     demanded $3,000 for actual damages which I will be easy to
14     explain, and my attorneys' fees as provided for under the
15     statute.
16              THE COURT:  And what are your attorneys' fees to date?
17              MR. LANGEL:  $7,000.  A little less.  I'm not counting
18     today, your Honor.
19              THE COURT:  Okay.
20              And the 3,000 of actual?
21              MR. LANGEL:  That's correct.
22              THE COURT:  Is what?
23              MR. LANGEL:  Is the fact that he received this
24     judgment and this notice of judgment-debtor or obligor visiting
25     his bank and a bank officer told him, yes, his bank account can
```

19RYBODC

1   be attached notwithstanding the defendant's error that they

2   got.  No one wants to have a restrained bank account.

3            THE COURT:  How does that equal 3,000 bucks?

4            MR. LANGEL:  3,000?

5            THE COURT:  Yes.

6            MR. LANGEL:  Because the physical manifestations of

7   that which the Second Circuit allows for.

8            THE COURT:  Has he seen a doctor?

9            MR. LANGEL:  Yes.  He saw a doctor about a week after

10  the incident.

11           THE COURT:  Who said his heart or whatever it is was

12  caused by this?

13           MR. LANGEL:  I can't say that for sure, your Honor --

14           THE COURT:  Well --

15           MR. LANGEL:  He went to the doctor.

16           THE COURT:  There is a reason for statutory and then

17  the actual may be the 150 bucks is not covered by health

18  insurance that the doctor charged or whatever.

19           Where do we go from that to 3,000?

20           MR. LANGEL:  The physical manifestations, the stress,

21  the anxiety, the sleeplessness, the deprivation of

22  sleeplessness and the other physical manifestations cited in

23  the complaint which has been held in the Second Circuit.

24           THE COURT:  And the doctor is going to testify to all

25  this at a cost to you of five to $10,000.

19RYBODC

```
 1          MR. LANGEL:  Not necessarily.  I have not committed to
 2     producing the doctor yet.
 3          THE COURT:  You have to if he is on your witness list.
 4     Is he on your witness list?
 5          MR. LANGEL:  Not as of yet.
 6          THE COURT:  Did you all do 26(a) mandatory
 7     disclosures?
 8          MR. PRESSLER:  The only thing he mentioned is Mr.
 9     Bodur and Mr. Bodur's wife and he says wife with knowledge of
10     dispute and knowledge of plaintiff's injury.
11          THE COURT:  Slow down.
12          We are going to try to settle this case before the
13     legal fees become ten times anything else.  Your discovery
14     cutoff -- your time for an expert report is past and I assume
15     you have not done one, correct?
16          MR. LANGEL:  That's correct.
17          THE COURT:  All right.
18          And I assume -- do I assume the defendant is not doing
19     an expert report?
20          MR. PRESSLER:  There is nothing to rebut so no.
21          THE COURT:  There may be $3,000 to rebut and the
22     expert report will probably cost you five.
23          MR. PRESSLER:  I haven't seen an expert report so
24     until I see one --
25          THE COURT:  He's not having one.  His time is past.
```

19RYBODC

| | |
|---|---|
| 1 | MR. PRESSLER:  I'm willing to, if it came to that, to |
| 2 | let a jury decide if a man making $250,000 a year is that |
| 3 | challenged by a 1,100 judgment. |
| 4 | THE COURT:  Good. |
| 5 | No expert reports from either side. |
| 6 | And since we got the third player here on the phone, |
| 7 | Mr. Greystone -- |
| 8 | MR. GREYSTEON:  Yes, your Honor. |
| 9 | THE COURT:  Same position, no expert report? |
| 10 | MR. GREYSTEON:  That's correct, your Honor. |
| 11 | THE COURT:  Good.  Okay. |
| 12 | We have taken care of that. |
| 13 | Do you want to talk settlement? |
| 14 | MR. PRESSLER:  Quite frankly, your Honor, Mr. Bodur |
| 15 | testified -- again, we have already taken his deposition so we |
| 16 | are no longer relying on the allegations of the complaint, |
| 17 | which are quite expansive, but we are relying on Mr. Bodur's |
| 18 | actual testimony. |
| 19 | He testified he has had a long-standing heart |
| 20 | condition for which has been related to stress, that he has |
| 21 | been going to the doctors for quite a few years. |
| 22 | He is a vice president of technology for the New York |
| 23 | Institute of Technology.  He has a fairly responsible position. |
| 24 | He is also fairly astute in matters of computers and the |
| 25 | Internet, et cetera.  In his conversation in 2008 he mentioned |

19RYBODC

```
1   to my firm that he has had this problem and he asked if we

2   could do something about getting his records because he

3   recognized that his records had been corrupted somehow with the

4   Ibrahim Bodur who's got lots of judgments against him.

5           But he -- so that was his only testimony.  He also

6   testified -- he also negated most of the other allegations that

7   have been made in the complaint and in the past by Mr. Langel,

8   i.e., problems with his wife, problems with his job,

9   problems -- in terms of the bank, he asked the bank a

10  hypothetical question if you got a judgment would you honor it.

11  That's it.  He didn't ask to what extent would you honor it, he

12  didn't say well, it was -- if it was an 1,100 judgment how much

13  would you freeze.  He didn't ask any questions specific to his

14  situation to better understand it.

15          Plus in New York, in the State of New York a judgment

16  has the debtor's address so he also realized it wasn't his

17  address on the note because it wasn't the right address.  The

18  address was corrupted.

19          THE COURT:  Well, I'm not sure the address gets you

20  anything.  You also sent a copy of the judgment to his own

21  address.

22          But be that as it may, it sounds like we're got a

23  maximum of a thousand dollars statutory damages, some

24  possibility of some non-statutory actual damages and that the

25  attorneys' fees, if you run this case through to its
```

19RYBODC

 1   conclusion, are going to be significantly greater than anything

 2   else at stake in the case and that assumes that the court

 3   can't, which it may or may not be able to do, cut off

 4   attorneys' fees at a certain point based on where the case

 5   stands.

 6              So is there a way to settle this either by settling as

 7   to the plaintiff and a leaving attorneys' fees for the court's

 8   determination?  Is there a way to settle this in total today or

 9   should I go back to the issue of how much time is going to be

10   spent on deposing the defendant on something that seems to be

11   uncontested?

12              What is defendant's pleasure, starting with Pressler.

13              MR. PRESSLER:  Quite frankly, as I say, I was first

14   approached back in March when -- after the notice went to Mr.

15   Bodur, told Mr. Langel that his address would be removed from

16   the file and that was that.

17              Mr. Langel has alleged that there were continued

18   contacts with his client.  His client testified that there were

19   no contacts.  There has never been any phone contacts.  The --

20   this was phone contact in sometime in 2005-2006, but that's it.

21   Since then he has testified that there was no other phone

22   contact initiated by my office or by the other defendant,

23   Palisades Collection.  So we are limited to that one letter

24   within the statutory period of 2011 and, quite frankly, I think

25   this case law says on a motion for summary judgment we're going

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

19RYBODC

1    to walk.

2           THE COURT:  How much is the motion going to cost you,

3    if you care?

4           MR. PRESSLER:  I don't care to be candid.  I don't.

5    Otherwise I would have settled it when he, when he lowered his

6    demand from 20,000 and removed -- because at that time he is

7    also alleging that we made inquiries and placed items on the

8    credit report.  He then rescinded that when I said how about

9    sending me a credit report, because we did that.  I would be

10   very concerned.  That was later withdrawn and the amount went

11   from 20,000 to 3,500.

12          Understand something, your Honor, just to put this in

13   a little more context, Mr. Langel is very ambition in another

14   case where we have an issue of service, good or bad service.

15   I've got a 347 count complaint on another FC case from

16   Mr. Langel which is, again, a thousand dollar case at the end

17   of the day.  So I can't encourage that kind of behavior if he's

18   got nothing else to do with his time to go through this.

19          THE COURT:  That's fine.

20          Let's go back to the deposition.

21          What documents do you have about this debt?  And,

22   frankly, I'm not sure it's even relevant because it is

23   conceded.  And let me get this done in a slightly more formal

24   way.

25          You are stipulating, Mr. Williamson, that this is not

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

19RYBODC

```
 1    a debt of this plaintiff but someone with a similar first and
 2    last name?
 3              MR. PRESSLER:  Absolutely.
 4              THE COURT:  With that, what you do you need on the
 5    plaintiff's said?
 6              MR. LANGEL:  Obviously any documentation with --
 7              THE COURT:  Okay.  But stop.
 8         If you are going to be, you know, you want the world,
 9    remember you both of you -- I keep saying both because the
10    defendant on the phone is lost in memory, but, you know, it
11    applies to all defendants, you all did a 26(a).  Whatever
12    documents they listed in their 26(a) that's all they can use at
13    trial.
14         So, for example, you know, your number one, anything
15    that they are going to use at trial, that's a nonentity
16    request.  That's not something I would ever enforce.
17         And if you keep asking for the sun, the moon and the
18    stars in what is even under your current view a $4,000 case, I
19    am not going to parse the request and I'm just going to say no
20    and you'll have to re-serve the demand and you will be out of
21    time.
22         So looking down at your list of six things, tell me
23    exactly what it is that you must have in light of defendant's
24    stipulation.
25         I take it, Mr. Greystone, you join in that
```

19RYBODC

```
 1    stipulation, correct?

 2              MR. GREYSTEON:  Yes, your Honor, I have no objection

 3    to the stipulation as indicated by counsel for Pressler are

 4    accurate.

 5              THE COURT:  Good.

 6              MR. LANGEL:  Your Honor, it's my contention that

 7    number one is relevant.

 8              THE COURT:  Okay.  Then it's my contention that you

 9    lose.

10              Next.

11              MR. LANGEL:  I will --

12              THE COURT:  Come on, don't waste my time.

13              MR. LANGEL:  I'm sorry.

14              Number two, I'm sorry, not number one.

15              MR. PRESSLER:  You got the list of areas, 36 areas

16    that we have duces tecum?

17              THE COURT:  No.  I'm sorry, I only got a schedule of

18    records under Exhibit A.

19              MR. PRESSLER:  Excuse me, your Honor, I apologize.

20    This is the more current one.  I'm sorry.

21              THE COURT:  That's okay.

22              (Handing to the court)

23              (Pause)

24              I want the documents first, subject to the deposition

25    we will get to second.
```

19RYBODC

| 1 | But I'm not even sure -- I mean, other than running up

2 | fees, what is it you want to develop from this deposition that

3 | isn't stipulated?

4 | MR. LANGEL:  It's my burden to show frequency,

5 | persistent and intent --

6 | THE COURT:  Your own client said there were, like, two

7 | letters.

8 | MR. LANGEL:  Pattern evidence with regard to other

9 | cases is relevant.

10 | THE COURT:  Not in my court.

11 | MR. LANGEL:  Okay.

12 | THE COURT:  What is it you the want about their

13 | dealings with your client?

14 | MR. LANGEL:  I need to know how they got ahold of my

15 | client.  Why did they decide to target my client in the first

16 | place?

17 | THE COURT:  Because his name is the same.

18 | MR. LANGEL:  His name is the same with one misspelled

19 | letter.  Also he resides in a different county.  It's a mystery

20 | why they decided to target a man with a different first name

21 | who lives in a different county.

22 | MR. PRESSLER:  I can explain that.

23 | THE COURT:  No.  You can ask that question at the

24 | deposition.

25 | What else?

19RYBODC

1          And I guess now you are mixing what you want to ask at

2     the deposition and what you want documents on.

3          MR. LANGEL:  Your Honor, the defendant's policies,

4     procedures and methods are relevant.

5          THE COURT:  Why?  They admit they screwed up.  They

6     admit they sent it to him, they admit it's not him.

7          MR. LANGEL:  Because even though counsel claims that

8     he's not alleging mistake because he didn't raise it as an

9     affirmative defense, he is still raising it in his pretrial

10    litigation documents and he's not even allowed to make the

11    claim at trial if he doesn't raise it as an affirmative

12    defense.  Yes, he's raising it now to preclude me asking for

13    it.

14         THE COURT:  So it's an affirmative defense.  You are

15    trying to create an affirmative defense that he hasn't alleged

16    and then take discovery on it.

17         MR. PRESSLER:  Mr. Bodur is going to be my witness for

18    how his address was utilized, because, quite frank, Mr. Bodur

19    testified that he's aware that his address, that addresses get

20    corrupted and somehow his address was attached to these other

21    cases.  So Mr. Bodur is my best witness for that, how that

22    happened, how his address, how his address came to be used.

23         THE COURT:  Does it make any sense to move for summary

24    judgment now if you are moving for summary judgment and allow

25    the plaintiff to take the Pressler firm's deposition after that

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

19RYBODC

1     in the event that the case isn't dismissed?

2                MR. PRESSLER:  I would think so, your Honor.

3                MR. LANGEL:  Yes, I think so, your Honor.

4                THE COURT:  Good.  Let's save money.

5           So can we say discovery is closed and we're going to

6     have cross-motions for summary judgment?

7                MR. GREYSTEON:  Your Honor, this is John Greystone on

8     behalf of Palisades.

9                THE COURT:  Yes.

10               MR. GREYSTEON:  May I be heard?

11               THE COURT:  Yes.

12               MR. GREYSTEON:  I am referred to close of discovery.

13    I have no objection to going to summary judgment at this time.

14    In the event that summary judgment is not granted and the case

15    is continued, although the plaintiff's depositions taken --

16               THE COURT:  Slow down, Mr. Greystone, the reporter is

17    losing you.  Start again.

18               MR. GREYSTEON:  Sorry, sir.

19          In the event that this case continues after an

20    adjudication on the summary judgment motion and in the interim

21    discovery is closed, will discovery be open again at least for

22    me to sent discovery to the plaintiff to respond?

23               THE COURT:  What is it you need that hasn't already

24    been provided in response to Mr. Williamson's discovery

25    demands?

19RYBODC

```
 1              MR. PRESSLER:  I haven't served any, your Honor.

 2              THE COURT:  You just took the plaintiff's deposition.

 3              MR. PRESSLER:  We took the plaintiff's deposition.

 4              MR. GREYSTEON:  Yes, sir.

 5              THE COURT:  What material, if any, do you need from

 6    the plaintiff?

 7              MR. GREYSTEON:  With regard to plaintiff's case in

 8    chief, I want an affirmation with regard to what documentation

 9    and what witnesses he is presenting.

10              THE COURT:  You got that.  It's called a 26(a).

11              MR. GREYSTEON:  If that's the ruling, your Honor,

12    that's fine with me.

13              THE COURT:  Good.

14              Okay.

15              Is plaintiff moving for summary judgment or just

16    defendant?

17              MR. LANGEL:  Plaintiff will.

18              THE COURT:  Okay.

19              Does anyone remember the Judge McMahon required

20    pre-motion clearance?

21              I guess the other issue you all want to consent to

22    have the motion before me on a dispositive basis pursuant to

23    267 U.S. Code 636(c)?

24              MR. PRESSLER:  No problem with that, your Honor.

25              MR. LANGEL:  I consent, your Honor.
```

19RYBODC

```
 1              THE COURT:  Mr. Greystone?

 2              MR. GREYSTEON:  Your Honor, I have no objection.

 3              THE COURT:  Good.  So the two of you who are here,

 4     there should be a form on the corner of one or both of your

 5     desks, I only need one of you to start filling it out.  If each

 6     of you would just sign the appropriate place, pass it to the

 7     other.

 8              Mr. Greystone, sorry, your transcript consent will

 9     have to suffice.

10              MR. GREYSTEON:  Yes, your Honor.

11              THE COURT:  Let Mr. Williamson start writing it first.

12     I only need one form.  Pass it over to Mr. Langel when you are

13     done.

14              Do you want to do simultaneous briefing, in which case

15     I would limit it to a brief and a response, no reply, or do you

16     want to do some sort of sequential, but I would like a limited

17     number of briefs involved.  What is your pleasure?

18              MR. PRESSLER:  I think the defendant -- Mr. Greystone

19     can confirm or deny -- but I think we can do a joint

20     submission.

21              THE COURT:  That would be good.

22              Mr. Greystone, is that okay with you?

23              MR. GREYSTEON:  No objection to that.  However, I

24     would like to have the opportunity to respond to plaintiff's

25     response to the joint motion.
```

19RYBODC

1          THE COURT:  What I'm trying to do is not wind up with

2     too many briefs.

3          In other words, either we're going to do plaintiff

4     moves for summary judgment simultaneously with defendants

5     moving and then you each respond to each other a few weeks

6     later or otherwise we got to do, you know, plaintiff's,

7     defendant's, plaintiff's, defendant's, and repetitive, or

8     plaintiff, defendant, et cetera, et cetera.

9          MR. PRESSLER:  Could I make a suggestion?

10          THE COURT:  Sure.

11          MR. PRESSLER:  Could we have a limited five page reply

12     on each side, just something very brief just in case?

13          I have done this before and I'm afraid that, you know,

14     something happens that the sky falls in and then you're stuck

15     because you can't respond to it.

16          THE COURT:  You are responding in the sense that you

17     are putting in your opening briefs at the same time as the

18     plaintiffs.  Two weeks later you are opposing his motion and,

19     you know, since he has already previous viewed yours and vice

20     versa, it seems to me the two rounds is more than enough.

21          If you desperately need a reply, you can seek

22     permission for it at that point.

23          MR. PRESSLER:  Okay.  That's fair enough.  Thank you.

24          THE COURT:  So when do you all want to get your motion

25     in?

19RYBODC

1          MR. GREYSTEON:  Your Honor, with all respect, with

2   regard with the holidays, I will be gone from the office or our

3   office will be closed for the next few days starting Thursday

4   and Friday, and then, unfortunately, we have the high holiday

5   continuing finishing up the end of next week.

6          THE COURT:  Fortunately or unfortunately, that is

7   Friday night and Saturday so you lose some time.

8              Two weeks from now; more, less?  What is your

9   pleasure?

10         MR. PRESSLER:  Two weeks from today?  I would ask for

11  more because I'm in the middle of --

12         THE COURT:  About the 28th of October?

13             Do you really need a month from now on this small case

14  to get motions in?

15         MR. PRESSLER:  Well, I have the same problems with the

16  holidays.  I will be gone plus I'm in the midst of several

17  other motions that are due on the 8th, the 10th, that week that

18  are fairly expansive.

19         THE COURT:  Can you do it by the 21st?

20         MR. PRESSLER:  I won't be in town.  I will be out of

21  town from the 17th to the 21st.

22         THE COURT:  All right.

23             Does October 28 work for the plaintiff?

24         MR. LANGEL:  Yes, it does, your Honor.

25         THE COURT:  All right.  Motions on October 28.  Reply

19RYBODC

1    or opposition, whatever we are calling it, one week or two?

2                MR. PRESSLER:  Two.

3                MR. LANGEL:  I prefer two, your Honor.

4                THE COURT:  Why am I am not surprised.

5                November 10 to avoid the 11th, which I think is

6    Veterans Day.

7                MR. GREYSTEON:  That's correct, your Honor.

8                THE COURT:  November 10 and no further briefing.

9                I assume the consent you are signing is to trial

10   should the case get that far, is that correct?

11               MR. PRESSLER:  It says any trial -- yes.

12               THE COURT:  Everyone is agreeing to that?

13               MR. LANGEL:  Yes, your Honor.

14               THE COURT:  Mr. Greystone, you agree, also?

15               MR. GREYSTEON:  I apologize.  Will you allow me an

16   opportunity to -- I didn't hear the last comment with regard to

17   trial.

18               THE COURT:  The last comment is the consent is in the

19   unlikely event that the summary judgment motion on one side or

20   the other is unsuccessful, is this a consent for everything in

21   the case, including a trial if we get that far?

22               MR. GREYSTEON:  Yes, sir.

23               THE COURT:  Okay.  Everybody agrees.

24               MR. LANGEL:  Your Honor, did I understand correctly,

25   should we both lose this motion, the plaintiff gets the

1    opportunity then to depose the defendant?

2         THE COURT:  If you desperately need it, but I'm going

3    to, you know, either suggest that defendant makes a Rule 68

4    offer or in any event I'm going to look at my equitable powers

5    on attorneys' fees and not, you know, let the attorneys' fees

6    become ten times the value of the underlying mistake in

7    judgment and/or the statutory and perhaps actual damages here.

8    So spend your money wisely, because you may not get it

9    reimbursed.

10        All right.

11        Can you hand the form up, please, Mr. Langel.

12        MR. LANGEL:  I sure will.

13        MR. GREYSTEON:  Your Honor, may I be heard?

14        THE COURT:  Yes.

15        MR. GREYSTEON:  I would like to thank you near the end

16   of the hearing, I want to thank your Honor for allowing me to

17   speak in the hearing via telephone as opposed to in person.

18        THE COURT:  You are welcome.

19        MR. PRESSLER:  I actually do apologize for being a few

20   minutes late.  I'm coming from New Jersey, I'm not in New York.

21        THE COURT:  Despite the card.

22        MR. PRESSLER:  I'm actually in central Jersey.

23        THE COURT:  Let me give you the disposition back,

24   Mr. Williamson.

25        Despite the fact that I guess at least on your side,

19RYBODC

1    Mr. Williamson, you are, you know, spending your own firm's

2    time, which is not necessarily money, this is a case that

3    strikes me as one that should settle.

4               MR. PRESSLER:  Unfortunately, I got 30 of them like

5    that.

6               THE COURT:  Okay.

7               If you are sending a message to Mr. Langel, so be it.

8    I wish you weren't sending it in my case as opposed to someone

9    else's.

10              MR. PRESSLER:  I apologize for that, your Honor.

11              THE COURT:  It's okay.

12              All right.

13              Since I do think I need the transcript to fully

14   understand what you all said today, et cetera, any reason why

15   it shouldn't be split 50/50 between plaintiff and defendant and

16   the defendant can hack up their piece as they wish for the

17   transcript?

18              MR. PRESSLER:  I guess not, your Honor.

19              MR. GREYSTEON:  I have no objection, your Honor.

20              THE COURT:  Okay.  Make your arrangements with the

21   reporter, and with that we are adjourned.  I will get out a

22   minute order with respect to the motion dates.

23              MR. GREYSTEON:  Thank you.

24              MR. PRESSLER:  Thank you very much, your Honor.

25              THE COURT:  Thank you all.