UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IBRAHIM NIYAZI BODUR,                                :

          Plaintiff,                          :

        -against-                             :

PALISADES COLLECTION, LLC and        :
PRESSLER AND PRESSLER, LLP,

          Defendants.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11 Civ. 3475 (AJP)

**OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Ibrahim Bodur brings this action alleging that defendants Palisades Collection, LLC and Pressler and Pressler, LLP violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and New York General Business Law ("GBL") § 349 when, inter alia, they attempted to collect a debt from Bodur that they knew he did not owe.  (See Dkt. No. 1: Compl.)

        Presently before the Court are the parties' cross-motions for summary judgment. (Dkt. No. 16: Defs. Notice of Motion; Dkt. No. 20: Bodur Notice of Motion).  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 15: § 636 Consent; Dkt. No. 21: Langel 10/28/11 Aff. Ex. 9: 9/27/11 Conf. Tr. at 18-19.)

        For the reasons set forth below, Bodur's summary judgment motion is GRANTED against Pressler but DENIED against Palisades.  Defendants' summary judgment motion is DENIED

G:\OPS\BODUR

2

for Pressler but <u>GRANTED</u> for Palisades.  In short, Palisades is dismissed, liability is established against Pressler, and damages remain for determination.

### FACTS

On August 18, 2006, the Pressler law firm[1] obtained a $1,126 judgment for its client Palisades in Kings County Civil Court against Ibraham Bodur, living at 2370 Ocean Avenue, Apt. 1L, Brooklyn, NY, for an unpaid AT&T Wireless bill.  (Dkt. No. 19: Greystone 10/28/11 Aff. Ex. I: Defs. Rule 56.1 Stmt. ¶¶ 2, 11, 13-14; Dkt. No. 20: Bodur Rule 56.1 Stmt. ¶¶ 1, 3; Dkt. No. 21: Langel 10/28/11 Aff. Ex. 6: 8/18/06 Judgment; Dkt. No. 26: Greystone 11/10/11 Aff. Ex. I: Defs. 2d Rule 56.1 Stmt.[2] ¶ 1; Langel 11/10/11 Aff. Ex. 10: Bodur 2d Rule 56.1 Stmt. ¶ 10.)

Plaintiff Ibrahim Bodur is the Vice President of Information Technology and Infrastructure at New York Institute of Technology, overseeing a $4 million budget.   (Dkt. No. 1: Compl. ¶ 14.)  Plaintiff Ibrahim Bodur lives at 420 South Chelsea Road, White Plains, NY, and has never lived in Brooklyn.  (Defs. Rule 56.1 Stmt. ¶ 13; Bodur Rule 56.1 Stmt. ¶ 2; Defs. 2d Rule 56.1 Stmt. ¶ 2.)  Attempting to collect Palisades' civil judgment, Pressler sent a February 1, 2008 collection letter addressed to Ibraham Bodur to plaintiff Ibrahim Bodur's White Plains address. (Defs. Rule 56.1 Stmt. ¶¶ 2, 3, 14; Bodur Rule 56.1 Stmt. ¶ 5; Langel 10/28/11 Aff. Ex. 4: 2/1/08 Pressler Letter; Defs. 2d Rule 56.1 Stmt. at pp. 3-4, 6; Bodur 2d Rule 56.1 Stmt. ¶¶ 1-3, 6.)[3]  In

---

[1]   The Pressler law firm "Specializ[es] in Retail Collections" and "provides a total retail collection environment."  (Dkt. No. 28: Langel 11/10/11 Aff. Ex. 12: Pressler Webpage.)

[2]   Because the parties submitted simultaneous cross summary judgment motions, Bodur and defendants filed second Rule 56.1 Statements to oppose the original submissions.

[3]   Ibrahim Bodur claims that Pressler called him in late 2005 or early 2006 regarding the debt,
(continued...)

response, Ibrahim Bodur called Pressler on February 8, 2008, provided his date of birth and Social Security number; Pressler confirmed that Bodur was not the debtor and promised to remove Ibrahim Bodur from its file.  (Defs. Rule 56.1 Stmt. ¶ 8; Bodur Rule 56.1 Stmt. ¶ 6; Defs. 2d Rule 56.1 Stmt. ¶ 1 at p. 3, ¶¶ 4, 6; Bodur 2d Rule 56.1 Stmt. ¶¶ 3, 9.)[4/]

Despite acknowledging that Ibrahim Bodur was not the debtor (see n.4), Pressler sent a February 18, 2011 collection letter addressed to Ibrah<u>a</u>m Bodur to Ibrah<u>i</u>m Bodur's address, attaching the August 18, 2006 judgment and stating that it would "proceed to enforce this judgment until an arrangement is agreed to or the judgment is paid in full."  (Defs. Rule 56.1 Stmt. ¶¶ 4, 14; Bodur Rule 56.1 Stmt. ¶ 8; Langel 10/28/11 Aff. Ex. 6: 2/18/11 Pressler Letter & 8/18/06 Judgment; Defs. 2d Rule 56.1 Stmt. ¶ 1 at pp. 3-4, ¶ 8; Bodur 2d Rule 56.1 Stmt. ¶ 3.)  The August 18, 2006 judgment named Ibrah<u>a</u>m Bodur and listed the debtor's address as 2370 Ocean Avenue, Apt. 1L, Brooklyn, NY.  (8/18/06 Judgment.) The February 18, 2011 collection letter also included a "Notice to Judgment Debtor or Obligor," addressed to Ibrah<u>a</u>m Bodur at Ibrah<u>i</u>m Bodur's address, stating that "[m]oney or property belonging to you may have been taken or held in order to satisfy a

---

[3/]      (...continued)
          but agreed to remove him from their files after he provided his personal information.  (Bodur Rule 56.1 Stmt. ¶ 4; Bodur 2d Rule 56.1 Stmt. ¶¶ 3, 7.)  Pressler denies that it called Bodur in 2005 or 2006.  (Defs. Rule 56.1 Stmt. ¶ 8; Defs. 2d Rule 56.1 Stmt. ¶ 1 at p. 3, ¶ 4.)

[4/]      Pressler's own computerized notes document Ibrahim Bodur's February 8, 2008 call.  (Langel 10/28/11 Aff. Ex. 7: Pressler Computer Notes.)  Those notes confirm Bodur's testimony that he provided his Social Security number and date of birth, which did not match those of Ibraham Bodur, and that the Pressler representative advised Ibrahim Bodur they "have [the] wrong info."  (Id.)

Judgment or Order which has been entered against you."  (Bodur Rule 56.1 Stmt. ¶ 8; Langel

10/28/11 Aff. Ex. 6: 2/18/11 Notice; Defs. 2d Rule 56.1 Stmt. ¶ 8.)

Thinking that he was "a victim of mistaken identity," plaintiff Ibrahim Bodur was

concerned that the collection letter referred to him and could lead to financial trouble.  (Bodur Rule

56.1 Stmt. ¶¶ 9, 13; Bodur 2d Rule 56.1 Stmt. ¶ 4.)[5]  Bodur spoke with his bank manager who

informed him that Bodur's "assets were at risk if his name and address matched the enforcement

documents."  (Bodur Rule 56.1 Stmt. ¶ 10; Bodur Dep. at 42.)[6]  This information exacerbated

Bodur's pre-existing "stress induced heart palpitations" and caused him stress, sleep loss and anxiety

"that lasted several days and weeks."  (Bodur Rule 56.1 Stmt. ¶¶ 11-12.)

Represented by counsel, on May 20, 2011 Bodur filed this lawsuit alleging that

Pressler and Palisades violated several provisions of the FDCPA and GBL § 349 when, inter alia,

they attempted to collect a debt from Ibrahim Bodur that they knew he did not owe.  (Compl.)

Ibrahim Bodur seeks actual damages for, inter alia, "sleep deprivation; constant anxiety;

nervousness; fear; worry; fright; shock; strain to his marriage; humiliation; intimidation; lost

---

[5]    Ibrahim Bodur explained in his deposition that, even though the February 18, 2011
collection letter had a different spelling of his first name, listed a Brooklyn address where
he never lived and referenced a delinquent account he never owned, Ibrahim Bodur "highly
suspected" that the letter referred to him "[b]ecause mistaken identity situation do [happen]
and [he] was under the expectation this was [a] mistaken identity situation, which still could
lead [him] to some financial trouble inappropriately."  (Dkt. No. 19: Greystone 10/28/11 Aff.
Ex. H: Bodur Dep. at 39-42, 80-82, 101, 106-09; Bodur 2d Rule 56.1 Stmt. ¶¶ 4-5, 8.)  As
to the different spelling of his first name, Ibrahim Bodur claimed that he "assumed it to be
a simple typo" because "[i]t had happened a lot in [his] life."  (Bodur Dep. at 39-40, 81, 101,
106-09; Bodur 2d Rule 56.1 Stmt. ¶¶ 4-5, 8.)

[6]    Bodur's assets were never frozen and his wages were never garnished.  (Defs. Rule 56.1
Stmt. ¶¶ 23-24; Defs. 2d Rule 56.1 Stmt. ¶ 1 at pp. 4-5.)

concentration at work; and instability." (Compl. ¶¶ 27, 37.)  Bodur also seeks statutory damages, attorney's fees and court costs. (Compl. ¶¶ 25-26, 38.)

**The Parties' Motions**

Bodur's summary judgment motion argues that Pressler violated the FDCPA by trying "to collect a debt that he did not owe" even after Pressler knew he was not the debtor. (Dkt. No. 22: Bodur Br. at 4, 8.)  Bodur further argues that Palisades is vicariously liable for its agent Pressler's FDCPA violation. (Bodur Br. at 9.)  Bodur asserts that he is entitled to summary judgment because "defendants have no cognizable defense for dunning the wrong person." (Bodur Br. at 4.)

Defendants cross-moved for summary judgment, arguing that "Pressler was not attempting to collect a debt from Plaintiff," but rather "was attempting to collect a debt from Defendant/Debtor, Ibraham Bodur." (Dkt. No. 18: Defs. Br. at 21.)  Specifically, defendants argue that the collection letters sent to Ibrah<u>i</u>m Bodur's home were addressed to Ibrah<u>a</u>m Bodur and listed a Brooklyn address where plaintiff Ibrahim Bodur admittedly never had lived. (Defs. Br. at 21.)  Defendants argue that Ibrahim Bodur "had no reason to believe" that they were "attempt[ing] to collect a debt from him." (Defs. Br. at 21.)  Additionally, Palisades argues that it could not have violated the FDCPA because it never communicated with Ibrahim Bodur or mailed any letters to his address. (Defs. Br. at 30-31.)

## ANALYSIS

## I.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u>, <u>e.g.</u>, <u>Celotex</u>

<u>Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>,

477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); <u>Lang</u> v. <u>Ret. Living Pub. Co.</u>, 949 F.2d 576,

580 (2d Cir. 1991).

      The burden of showing that no genuine factual dispute exists rests on the party

seeking summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct.

1598, 1608 (1970); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2d Cir. 1994); <u>Gallo</u> v.

<u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may

discharge this burden by demonstrating to the Court that there is an absence of evidence to support

the non-moving party's case on an issue on which the non-movant has the burden of proof.  <u>See</u>, <u>e.g.</u>,

<u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. at 323, 106 S. Ct. at 2552-53.

      To defeat a summary judgment motion, the non-moving party must do "more than

simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus.</u>

<u>Co.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the

non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . .

is generally disputed." Fed. R. Civ. P. 56(c); <u>see</u>, <u>e.g.</u>, <u>Matsushita Elec. Indus. Co.</u> v. <u>Zenith Radio</u>

<u>Corp.</u>, 475 U.S. at 587, 106 S. Ct. at 1356; <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir.

2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)),

<u>cert. denied</u>, 540 U.S. 811, 124 S. Ct. 53 (2003).

      In evaluating the record to determine whether there is a genuine issue as to any

material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor."  <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255, 106 S. Ct. at 2513.[7/]
The Court draws all inferences in favor of the nonmoving party only after determining that such
inferences are reasonable, considering all the evidence presented.  <u>See, e.g.</u>, <u>Apex Oil Co.</u> v.
<u>DiMauro</u>, 822 F.2d 246, 252 (2d Cir.), <u>cert. denied</u>, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to
the issue on which summary judgment is sought, there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the nonmoving party, summary
judgment is improper."  <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 37.

  In considering a motion for summary judgment, the Court is not to resolve contested
issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  <u>See,
e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v.
<u>U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987).
To evaluate a fact's materiality, the substantive law determines which facts are critical and which
facts are irrelevant.  <u>See, e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510.
While "disputes over facts that might affect the outcome of the suit under the governing law will
properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or
unnecessary will not be counted."  <u>Id.</u> at 248, 106 S. Ct. at 2510 (citations omitted); <u>see also, e.g.</u>,
<u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d at 11-12.

  When there are cross-motions for summary judgment:

---

[7/]  <u>See also, e.g.</u>, <u>Feingold</u> v. <u>New York</u>, 366 F.3d 138, 148 (2d Cir. 2004); <u>Chambers</u> v. <u>TRM
Copy Ctrs. Corp.</u>, 43 F.3d at 36; <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d
at 1223.

>The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . .  Moreover, even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.  Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.

Morales v. Quintel Entm't Inc., 249 F.3d 115, 121 (2d  Cir. 2001) (citation omitted).[8/]

## II.    LEGAL STANDARDS GOVERNING THE FDCPA

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).[9/]

---

[8/]    Accord, e.g., Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010); Bronx Household of Faith v. Bd. of Educ. of City of N.Y., 492 F.3d 89, 96 (2d Cir. 2007); Barhold v. Rodriguez, 863 F.2d 233, 236 (2d Cir. 1988); Eastman Mach. Co. v. United States, 841 F.2d 469, 473-74 (2d Cir. 1988); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co., 618 F. Supp. 2d 280, 291 (S.D.N.Y. 2009); Alfano v. CIGNA Life Ins. Co., 07 Civ. 9661, 2009 WL 222351 at *13 (S.D.N.Y. Jan. 30, 2009) (Lynch, D.J.); U.S. SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006); Donoghue v. Casual Male Retail Group, Inc., 375 F. Supp. 2d 226, 230 (S.D.N.Y. 2005); Neely v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus., No. 00 CV 2013, 2004 WL 2851792 at *7 (E.D.N.Y. Dec. 8, 2004); Revlon Consumer Prods. Corp. v. Estee Lauder Cos., 00 Civ. 5960, 2003 WL 21751833 at *7 (S.D.N.Y. July 30, 2003) (Peck, M.J.).

[9/]    See, e.g., Hess v. Cohen & Slamowitz LLP, 637 F.3d 117, 120 (2d Cir. 2011); Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 134 (2d Cir.), cert. denied, 130 S. Ct. 3333 (2010); Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005); Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002); Andresakis v. Capital One Bank (USA) N.A., 09 Civ. 08411, 2011 WL 846830 at *4 (S.D.N.Y. Feb. 3, 2011), report & rec. adopted, 2011 WL 1097413 (S.D.N.Y. Mar. 23, 2011); Bank v. Pentagroup Fin., LLC, No. 08-CV-5293, 2009 WL 1606420 at *2 (E.D.N.Y. June 9, 2009); McAfee v. Law Firm of Forster & Garbus, No. 06-CV-2925, 2008 WL 3876079 at *4 (E.D.N.Y. Aug. 18, 2008).

The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."

Kropelnicki v. Siegel, 290 F.3d at 127 (quoting S. Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).[10/]

The FDCPA also was intended to "eliminate the recurring problem of debt collectors dunning the wrong person."  S. Rep. No. 95-382, at 4, reprinted in 1977 U.S.C.C.A.N. at 1699; see also H.R. Rep. 95-131, at 8 (1977) ("This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts.  This bill will make collectors behave responsibly towards people with whom they deal. . . . Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer.  In far too many cases debt collectors do not even bother to double check common names before beginning collection efforts.").

---

[10/]    Accord, e.g., Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d 542, 547-48 (S.D.N.Y. 2010); Bank v. Pentagroup Fin., LLC, 2009 WL 1606420 at *2; McAfee v. Law Firm of Forster & Garbus, 2008 WL 3876079 at *4.

The FDCPA prohibits a debt collector[11/] from using, <u>inter alia</u>, "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  This prohibition includes "false representation of . . . the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."  15 U.S.C. §§ 1692e(2)(A), 1692e(10).

"In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice."  <u>Maguire</u> v. <u>Citicorp Retail Servs., Inc.</u>, 147 F.3d 232, 236 (2d Cir. 1998).[12/]  "The hypothetical least sophisticated consumer does not have the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a

---

[11/]    Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. 1692a(6).

[12/]    <u>Accord</u>, <u>e.g.</u>, <u>Jacobson</u> v. <u>Healthcare Fin. Servs., Inc.</u>, 516 F.3d 85, 90 (2d Cir. 2008) ("In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'"); <u>Greco</u> v. <u>Trauner, Cohen & Thomas, L.L.P.</u>, 412 F.3d at 363 (Second Circuit has "construed FDCPA to require that debt collection letters be viewed from the perspective of the 'least sophisticated consumer.'"); <u>Clomon</u> v. <u>Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993) (adopting the least-sophisticated consumer standard); <u>Zimmerman</u> v. <u>Portfolio Recovery Assocs., LLC</u>, 276 F.R.D. 174, 178 (S.D.N.Y. 2011); <u>Herzlinger</u> v. <u>Nichter</u>, 09 Civ. 00192, 2011 WL 1434609 at *4 (S.D.N.Y. Feb. 9, 2011) ("The question of whether a debt collector's action violates the FDCPA is determined objectively from the viewpoint of the 'least sophisticated consumer.'"); <u>Bank</u> v. <u>Pentagroup Fin., LLC</u>, 2009 WL 1606420 at *3; <u>Larsen</u> v. <u>JBC Legal Grp., P.C.</u>, 533 F. Supp. 2d 290, 299 (E.D.N.Y. 2008) ("The test for determining whether a collection notice violates the FDCPA is an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector." (quotations omitted)).

dolt." Ellis v. Solomon & Solomon, P.C., 591 F.3d at 135 (quotations omitted).[13] "[A]lthough the goal of this standard is to protect 'the naive and credulous' from abusive debt collection practices, 'courts have carefully preserved the concept of reasonableness.'" Ehrich v. I.C. Sys., Inc., 681 F. Supp. 2d at 269 (quoting Clomon v. Jackson, 988 F.2d at 1319).[14] Thus, "the FDCPA does not aid plaintiffs whose claims are based on bizarre or idiosyncratic interpretations of collection notices," and "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Ellis v. Solomon & Solomon, P.C., 591 F.3d at 135 (quotations omitted).[15]

---

[13]    Accord, e.g., Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d at 90 ("The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the statute protects the gullible as well as the shrewd."); Clomon v. Jackson, 988 F.2d at 1318-19; Ehrich v. I.C. Sys., Inc., 681 F. Supp. 2d 265, 268-69 (E.D.N.Y. 2010); Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 661 (S.D.N.Y. 2006).

[14]    Accord, e.g., Ellis v. Solomon & Solomon, P.C., 591 F.3d at 135 ("While protecting those consumers most susceptible to abusive debt collection practices, [the Second Circuit] has been careful not to conflate lack of sophistication with unreasonableness."); Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d at 90 ("[I]n applying [the least sophisticated consumer] standard, we bear in mind the [FDCPA's] 'dual purpose': in addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications.  Even in 'crafting a norm that protects the naive and the credulous,' we have 'carefully preserved the concept of reasonableness.'") (citations to Clomon v. Jackson omitted); Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d at 363; Herzlinger v. Nichter, 2011 WL 1434609 at *4.

[15]    Accord, e.g., Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d at 90 ("[T]he FDCPA does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.'" (citation omitted)); Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d at 363 (The Second Circuit's "'least sophisticated consumer' standard is an objective analysis that seeks to protect 'the naive' from abusive practices, while simultaneously shielding debt collectors from liability for 'bizarre or idiosyncratic interpretations' of debt collection letters." (citation omitted)); Maguire v. Citicorp Retail Servs., Inc., 147 F.3d at 236; Herzlinger v. Nichter, 2011 WL 1434609 at *4 .

"In the Second Circuit, the least sophisticated consumer standard may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment." Herzlinger v. Nichter, 2011 WL 1434609 at *4.[16/]

Finally, "[b]ecause the [FDCPA] imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996).[17/] "'[A] single violation of the FDCPA is sufficient to impose liability.'" Zimmerman v. Portfolio Recovery Assocs., LLC, 276 F.R.D. at 177 (quoting Ellis v. Solomon & Solomon, P.C., 591 F.3d at 133).  A debt collector may avoid liability, however, by showing "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).

---

[16/]    Accord, e.g., Beauchamp v. Fin. Recovery Servs., Inc. 10 Civ. 4864, 2011 WL 891320 at *2 n.18 (S.D.N.Y. Mar. 14, 2011) ("Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss." (citing Christian Stueben, Judge or Jury? Determining Deception or Misrepresentation Under the Fair Debt Collection Practices Act, 78 Fordham L. Rev. 3107, 3133 & n.236, 3135-37 (2010)); Ehrich v. I.C. Sys., Inc., 681 F. Supp. 2d at 269 ("The least sophisticated consumer standard may be applied as a matter of law and thus is applicable in reviewing motions for summary judgment.").

[17/]    Accord, e.g., Hess v. Cohen & Slamowitz LLP, 637 F.3d at 125; Ellis v. Solomon & Solomon, P.C., 591 F.3d at 135 ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The Act 'is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.'"); Zimmerman v. Portfolio Recovery Assocs., LLC, 276 F.R.D. at 177 ("'The FDCPA is a strict liability statute. Accordingly, the consumer need not show intentional conduct by the debt collector.'"); Andresakis v. Capital One Bank (USA) N.A., 2011 WL 846830 at *4 ("The FDCPA is a strict liability statute; therefore a defendant's degree of culpability is relevant only with respect to damages."); Ehrich v. I.C. Sys., Inc., 681 F. Supp. 2d at 269; Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d at 661.

### III.   PRESSLER VIOLATED THE FDCPA BY SENDING A COLLECTION LETTER TO IBRAHIM BODUR'S HOME AFTER IT KNEW IBRAHIM BODUR WAS NOT THE DEBTOR

Plaintiff Ibrahim Bodur claims that Pressler violated the FDCPA's false representation provision by attempting to collect a debt from him that they knew he did not owe. (See page 4 above.)

Under the FDCPA, a debt collector is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the "false representation of . . . the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  District courts have found that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e." Stuart v. AR Res., Inc., Civ. No. 10-3520, 2011 WL 904167 at *4 & n.2 (E.D. Pa. Mar. 16, 2011); accord, e.g., Velazquez v. NCO Fin. Sys., Inc., No. 11-CV-00263, 2011 WL 2135633 at *5 (E.D. Pa. May 31, 2011) ("[D]emanding payment from the wrong individual, even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA as a matter of law."); Valdez v. Capital Mgmt. Servs., LP, Civ. No. 09-246, 2010 WL 4643272 at *12 (S.D. Tex. Nov. 16, 2010) ("Several district courts have held that attempting to collect a debt from a person whom the debt collector knows does not owe the debt misrepresents the 'character' or 'legal status' of the debt and is actionable under 15 U.S.C. § 1692e(2)(A).  [Plaintiff] has alleged that [defendant] continued to attempt to collect the debt . . . despite knowing that [plaintiff] did not incur or owe the debt.  This action would, if true, misrepresent the 'character' or 'legal status' of the debt." (citations omitted)); Johnson v. Bullhead Invs., LLC, No. 09CV639, 2010 WL 118274 at *6 (M.D.N.C. Jan. 11, 2010)

("[T]he act of serving a complaint and summons to the address of a person with almost the exact same name as the true debtor, when the debt collector <u>knows</u> that the person is not the true debtor, is a false and deceptive representation of the legal nature of the debt and is therefore a violation of the FDCPA."); <u>Owens</u> v. <u>Howe</u>, No. 04-CV-152, 2004 U.S. Dist. LEXIS 22728 at *34-35 (N.D. Ind. Nov. 8, 2004) ("[M]erely dunning a person who is not legally obligated to pay the debt makes the debt collector liable under [15 U.S.C. § 1692e(2)(A)] as a matter of law because it is, <u>ipso facto</u>, a false representation about the status or character of the debt."); <u>Beattie</u> v. <u>D.M. Collections, Inc.</u>, 754 F. Supp. 383, 392 (D. Del. 1991) ("[D]ebt collectors may be found in violation of subsection 1692e(2)(A) for mistakenly dunning the wrong individuals when they fail to exercise reasonable care in ascertaining the facts, such as by relying upon information on which a reasonable person would not have relied.").[18]

In order to determine whether Pressler's representations were false, this Court must evaluate Pressler's actions from the perspective of the least sophisticated consumer. (<u>See</u> cases cited on page 10 & n.12 above.)  Pressler's February 1, 2008 collection letter was addressed to Ibraham Bodur, but was sent to Ibrahim Bodur's home address.  (<u>See</u> pages 2-3 above.)  The collection letter referenced a Kings County Civil Court index number and a $1,256 balance.  (Dkt. No. 21: Langel 10/28/11 Aff. Ex. 6: 8/18/06 Judgment.)  The letter also stated that it was a "communication . . .

---

[18]    Dunning the wrong person also violates 15 U.S.C. § 1692e(10) prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."  <u>See</u>, <u>e.g.</u>, <u>Stuart</u> v. <u>AR Res., Inc.</u>, 2011 WL 904167 at *4 n.2 (a FDCPA claim that a debt collector attempted to collect from a non-debtor may be brought under either 15 U.S.C. § 1692e(2)(A) or § 1692e(10)).  Bodur bases his claim on both § 1692e(2)(A) and § 1692e(10).  (Dkt. No. 1: Compl. ¶ 24(c) & (f).)

from a debt collector," and that it was "an attempt to collect a debt." (Langel 10/28/11 Aff. Ex. 4: 2/1/08 Pressler Letter.) To the extent Ibrahim Bodur might have believed that Pressler was trying to collect the debt from him, this fear was allayed when a Pressler employee confirmed that Ibrahim Bodur was not the debtor and agreed to remove Ibrahim Bodur from Pressler's file. (See page 3 & n.4 above.) Had this been the sum of plaintiff Ibrahim Bodur's interactions with Pressler, this Court would not be inclined to find a FDCPA violation.[19] Compare Shapiro v. Law Offices of Cohen & Slamowitz, LLP., 06 Civ. 3773, 2007 WL 958513 at *3 (S.D.N.Y. Mar. 28, 2007) ("Following plaintiff's prompt recognition that the [collection] letter was erroneously sent to him, he notified defendant, which unequivocally informed plaintiff that [Shmuel Shapiro, and not plaintiff Samuel Shapiro] was the actual debtor. . . . In light of defendant's explicit assurance to plaintiff's counsel that plaintiff was not the actual debtor, it appears doubtful that even the least sophisticated consumer would regard the April 11, 2006 letter as anything more than another erroneous mailing."); with Velazquez v. NCO Fin. Sys., Inc., 2011 WL 2135633 at *5 ("[D]emanding payment from the wrong individual, even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA as a matter of law.").

Despite acknowledging in 2008 that plaintiff Ibrahim Bodur was not the debtor (see page 3 & n.4 above), however, Pressler sent a February 18, 2011 collection letter to Ibrahim Bodur's address listing Ibraham Bodur as the debtor (see page 3 above). This collection letter also included

---

[19]   While Bodur also claims that Pressler called him in 2005 or 2006 to collect the debt, defendants dispute that this call was ever made. (See page 3 n.3 above.) As this is a contested factual issue, the Court will not consider it in resolving the parties' summary judgment motions.

a "Notice to Judgment Debtor or Obligor," addressed to Ibraham Bodur at Ibrahim Bodur's address, stating that "[m]oney or property belonging to you may have been taken or held in order to satisfy a Judgment or Order which has been entered against you."  (See pages 3-4 above.)  Defendants argue that plaintiff Ibrahim Bodur "had no reason to believe" that the letter was an attempt to collect the debt from him because it was addressed to Ibraham Bodur and included the August 18, 2006 judgment listing the debtor's Brooklyn address (where Ibrahim Bodur admittedly never lived). (Dkt. No. 18: Defs. Br. at 21; Dkt. No. 25: Defs. Opp. Br. at 11, 15.)  In essence, defendants are arguing that they did not violate the FDCPA because plaintiff Ibrahim Bodur knew he was not the debtor and could not have reasonably believed that Pressler was attempting to collect the debt from him.

This argument is unavailing because the FDCPA was enacted, in part, to "eliminate the recurring problem of debt collectors dunning the wrong person." S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699; see also page 9 above.  Requiring a plaintiff to believe that he is the actual debtor would circumvent Congressional intent,

> allow[ing] unscrupulous debt collectors, and particularly buyers of junk debt who cannot verify the accuracy of the debts or the identities of the debtors, to simply file debt collection actions with impunity against all persons having a similar name as the debtor, on the chance that one of the named defendants is the true debtor, or that one of the named defendants will simply pay the debt allegedly owed under the threat of having a judgment obtained against them, with a resulting levy against their property.

Johnson v. Bullhead Invs., LLC, 2010 WL 118274 at *6.

Furthermore, even though Pressler knew before February 18, 2011 that Ibrahim Bodur was not the debtor, Pressler sent a collection letter to Ibrahim Bodur's address threatening to seize his assets.  (See pages 3-4 above.)  While the least sophisticated consumer might have viewed

Pressler's 2008 collection letter as an innocent mistake, Pressler's continued collection effort in 2011 - after Pressler had confirmed that Ibrahim Bodur was not the debtor - reasonably would appear to the least sophisticated consumer to be Pressler's concerted effort to collect the debt from Ibrahim Bodur.  See, e.g., Johnson v. Bullhead Invs., LLC, 2010 WL 118274 at *5 ("Applying the least sophisticated consumer test to the facts here, a plaintiff who is served with a summons at her residential address directed to a person with almost the same exact name, after the plaintiff has already informed the debt collector that she is not the true debtor, could reasonably assume that the debt collector was still trying to hold her liable for the alleged debt . . . .  [W]hen a debt collection agency continues to hound a consumer even after she has provided them with clear proof that she is not the true debtor, and when it files a lawsuit that is served at her residential address, an unsophisticated consumer would reasonably believe that the collector is still trying to make her liable for the debt.").

Moreover, plaintiff Ibrahim Bodur was so concerned after receiving the February 18, 2011 letter that he asked his bank manager whether his assets were at risk.  (See page 4 above.) While the least sophisticated consumer is an objective standard (see cases cited on page 10 & n.12 above), Ibrahim Bodur's action supports the finding that Pressler's letter appeared to be an attempt to collect the debt from him.  See, e.g., Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1177 (11th Cir. 1985) (fact that the least sophisticated consumer might be deceived by second dunning letter supported by fact that the plaintiff "hired a lawyer and responded to the second letter"); Dutton v. Wolhar, 809 F. Supp. 1130, 1136 (D. Del. 1992) ("Although the standard is not what [plaintiff]

believed, his testimony that he believed the letter was addressed to him and mislead him would be probative of the issue whether the least sophisticated debtor would be mislead.").

Consequently, this Court finds that, as a matter of law, the least sophisticated consumer could reasonably interpret Pressler's February 18, 2011 collection letter as an attempt to collect the debt from plaintiff Ibrahim Bodur.  Because the FDCPA is a strict liability statute (see cases cited on page 12 n.17 above), Pressler is liable whether or not it actually intended to collect the debt from plaintiff Ibrahim Bodur.[20]

Defendants nevertheless argue that they are entitled to summary judgment because plaintiff Ibrahim Bodur has failed to show that the February 18, 2011 collection letter pertained to a "debt," defined under the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  (Defs. Br. at 29-30, citing 15 U.S.C. § 1692(a)(4); Defs. Opp. Br. at 15-17.)  Because Bodur has not "specifically produce[d] any documentation" that the debt was for personal, family or household purposes, defendants argue that Bodur has no standing under the FDCPA.  (Defs. Br. at 29-30; Defs. Opp. Br. at 15-17.)

---

[20]     As noted on page 12 above, a debt collector may avoid liability by showing "that the [FDCPA] violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  At the September 27, 2011 conference, Pressler's counsel informed this Court that "[b]ona fide error is not raised in our papers as a defense."  (Langel 10/28/11 Aff. Ex. 9: 9/27/11 Conf. Tr. at 4.)  Furthermore, defendants did not raise a "bona fide error" defense in either their opposition to Bodur's summary judgment motion or defendants' own cross-motion for summary judgment.

This argument is unavailing.  As the plaintiff in Kings County Civil Court against Ibraham Bodur (see page 2 above), Palisades has all the relevant information and documents describing the nature of the underlying debt.  Additionally, Pressler represented Palisades in its civil suit against Ibraham Bodur (see page 2 above), and therefore must also have the relevant information and documents describing the nature of the underlying debt.  Bodur, on the other hand, is not the debtor and has no access to the information regarding the nature of the underlying debt.[21/] Considering that Pressler specializes in "[r]etail [c]ollections" (see page 2 n.1 above), that the debt was for a $1,126 AT&T Wireless account and that the debtor was an individual living in an apartment building (see page 2 above), this Court finds that the debt was for personal, family or household purposes.

Defendants also argue that Ibrahim Bodur "was never mistakenly pursued" to pay the debt and therefore does not meet the FDCPA's definition of "consumer" as a "natural person obligated or allegedly obligated to pay any debt."  (Defs. Opp. Br. at 16-17, citing 15 U.S.C. § 1692(a)(3).)  This argument also is meritless because, by demanding payment from Ibrahim Bodur and threatening to seize his assets (see pages 3-4 above), defendants were alleging that Ibrahim Bodur was obligated to pay the debt.  See, e.g., Velazquez v. NCO Fin. Sys., Inc., 2011 WL 2135633 at *4 (Plaintiff considered consumer under FDCPA where defendant "demanded payment from [plaintiff] and even threatened to report the collection to credit reporting bureaus."); Shapiro v. Law Offices of Cohen & Slamowitz, LLP., 2007 WL 958513 at *4 (collection letter sent to

---

[21/]     Bodur's counsel has tried twice to obtain the court file from Kings County Civil Court, but has been unsuccessful.  (Dkt. No. 27: Bodur Opp. Br. at 6.)

Samuel Shapiro's address concerning debt of Shmuel Shaprio gave plaintiff FCDPA standing: "because Plaintiff was 'allegedly obligated to pay [a] debt' that defendant sought to collect, [plaintiff] was a consumer within the meaning of the FDCPA."); Diaz v. D.L. Recovery Corp., 486 F. Supp. 2d 474, 477 (E.D. Pa. 2007) (Plaintiff considered a consumer under FDCPA where defendants "demanded money from [plaintiff] and even threatened to take possession of her belongings if she did not pay them."). Moreover, § 1692e(2)(A)'s false representation provision does not require that the debt collector's representation be directed at a "consumer."[22] Additionally, § 1692k(a) provides that a debt collector that violates the FCDPA "with respect to any person" is liable for damages to "such person." See 15 U.S.C. § 1692k(a) (emphasis added). Reading these provisions together, Bodur has standing. To hold otherwise would run contrary to the purpose of the FDCPA to "also protect[] people who do not owe money at all" since "collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts." (See page 9 above; see also cases cited at pages 13-14 above.)

---

[22]    15 U.S.C. § 1692e(2)(A) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>         . . .
>
>     (2) The false representation of--
>
>         (A) the character, amount, or legal status of any debt.

15 U.S.C. § 1692e(2)(A).

Because Pressler violated the FDCPA, Bodur is entitled to both actual damages and statutory damages of up to $1,000.  See 15 U.S.C. § 1692k(a)(1)-(2)(A).  Bodur is also entitled to attorney's fees and court costs under the FDCPA.  See 15 U.S.C. § 1692k(a)(3).  The amount of these damages, fees and costs will be determined subsequently.[23/]

## IV.   PALISADES IS NOT VICARIOUSLY LIABLE FOR PRESSLER'S FDCPA VIOLATION

Bodur does not allege that Palisades ever contacted him regarding the debt.  (See Dkt. No. 1: Compl.)  Rather, Bodur claims that Palisades "hired Pressler to make those communications that are the subject of this lawsuit," and therefore is vicariously liable for Pressler's conduct.  (Dkt. No. 22: Bodur Br. at 9; Dkt. No. 28: Langel 11/10/11 Aff. Ex. 10: Bodur 2d Rule 56.1 Stmt. ¶ 6.)

A debt collector may be vicariously liable for its agent's FDCPA violations.  See, e.g., Suquilanda v. Cohen & Slamowitz, LLP, 10 Civ. 5868, 2011 WL 4344044 at *4 (S.D.N.Y. Sept. 8, 2011) ("Courts have concluded that where the principal is a 'debt collector,' the principal may be

---

[23/]     In determining damages, the Second Circuit has instructed that:

> The decision on whether to award "additional damages" and on the size of any such award is committed to the sound discretion of the district court.  The district court must, however, consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any "additional damages" awarded.

Clomon v. Jackson, 988 F.2d 1314, 1322 (2d Cir. 1993) (citations omitted); accord, e.g., Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998); Dona v. Midland Credit Mgmt., Inc., No. CV 10-0825, 2011 WL 941204 at *2 (E.D.N.Y. Feb. 10, 2011), report & rec. adopted, 2011 WL 939724 (E.D.N.Y. Mar. 15, 2011); Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008); St. Denis v. New Horizon Credit, Inc., No. 05 CV 1952,  2006 WL 1965779 at *2 (D. Conn. July 12, 2006); Desantis v. Roz-Ber, Inc., 51 F. Supp. 2d 244, 251-52 (E.D.N.Y. 1999).

liable for its agent's FDCPA violations."); see also, e.g., Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 405 (3d Cir. 2000) (Debt collector that hired attorneys to collect a debt is liable for attorneys' FDCPA violations "because an entity that is itself a 'debt collector'-and hence subject to the FDCPA-should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir.1994) ("In order to give reasonable effect to section 1692i [of the FDCPA], we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."); DeFazio v. Leading Edge Recovery Solutions, LLC, No. 10-cv-02945, 2010 WL 5146765 at *3 (D.N.J. Dec. 13, 2010) ("[A]n entity that itself falls within the FDCPA's definition of debt collector may be found vicariously liable for unlawful collection activities carried out by another on its behalf." (quotations omitted)); Martsolf v. JBC Legal Grp., P.C., No. 04-CV-1346, 2008 WL 275719 at *10 (M.D. Pa. Jan. 30, 2008) ("An entity that owns a debt may be liable for FDCPA violations of a debt collector it engages to collect the obligation provided that the owner of the debt is itself a debt collector. . . . Hence, FDCPA liability levied upon an attorney debt collector may be equally imposed upon the attorney's debt collector client.").  Here, Pressler is a law firm debt collector, and Palisades "is a business entity engaged in the business of collecting debt in the State of New York."  (Dkt. No. 7: Palisades Ans. ¶ 8.)  Thus, Palisades may be vicariously liable for Pressler's acts.

        To be vicariously liable under the FDCPA, however, "the 'principal' must exercise control over the conduct or activities of the 'agent.'"  Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1173 (9th Cir. 2006) ("Under general principles of agency-which form the basis of vicarious liability under the FDCPA-to be liable for the actions of another, the 'principal' must

exercise control over the conduct or activities of the 'agent.'" (citation omitted)); <u>accord</u>, <u>e.g.</u>, <u>Herzlinger</u> v. <u>Nichter</u>, 09 Civ. 00192, 2011 WL 1434609 at *9 (S.D.N.Y. Feb. 9, 2011).[24/]  Bodur merely claims that Palisades hired Pressler to collect the debt, but he has failed to provide any evidence, or even claim, that Palisades exercised control over Pressler or was involved in any of Pressler's collection attempts.  Without evidence that Palisades exercised control over Pressler's conduct generally or as to Bodur specifically, Palisades is not vicariously liable and therefore is entitled to summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Herzlinger</u> v. <u>Nichter</u>, 2011 WL 1434609 at *9 (No vicarious liability where plaintiff "has offered no evidence upon which a reasonable trier of fact could conclude that the Nichter Defendants (as principal) exercised control over the Trans-Continental Defendants (as agent)."); <u>McNall</u> v. <u>Credit Bureau of Josephine Cnty.</u>, 689 F. Supp. 2d at 1278; <u>Cassady</u> v. <u>Union Adjustment Co.</u>, 2008 WL 4773976 at *6 (No vicarious liability where "plaintiff has offered no evidence upon which a reasonable trier of fact could conclude that Union exercised control over the Zee Law Group.").

## <u>CONCLUSION</u>

For the reasons stated above, Bodur's summary judgment motion (Dkt. No. 20) is <u>GRANTED</u> against Pressler on liability issues, but <u>DENIED</u> against Palisades.[25/]  Defendants'

---

[24/]   <u>See also</u>, <u>e.g.</u>, <u>Byrd</u> v. <u>Law Offices of John D. Clunk Co., LPA</u>, No. 09-cv-076, 2010 WL 816932 at *9 (S.D. Ohio Mar. 8, 2010); <u>McNall</u> v. <u>Credit Bureau of Josephine Cnty.</u>, 689 F. Supp. 2d 1265, 1277-78 (D. Or. 2010); <u>Cassady</u> v. <u>Union Adjustment Co.</u>, No. 07-5405, 2008 WL 4773976 at *6 (N.D. Cal. Oct. 27, 2008).

[25/]   Bodur's complaint alleges that defendants committed several other FDCPA violations.  (<u>See</u> Dkt. No. 1: Compl. ¶ 24.)  Bodur's summary judgment motion, however, addresses only his claim that defendants violated the FDCPA by attempting to collect a debt from him that he
(continued...)

summary judgment motion (Dkt. No. 16) is <u>DENIED</u> for Pressler but <u>GRANTED</u> for Palisades.

Accordingly, Palisades is dismissed, liability is established against Pressler, and damages remain

for determination.

   The Court will hold a status conference on December 21, 2011 at 2:30 p.m.

   SO ORDERED.

DATED:  New York, New York
     December 15, 2011

                      _____
                      **Andrew J. Peck**
                      United States Magistrate Judge

Copies to:  Jesse Langel, Esq.
      Jonathan J. Greystone, Esq.
      Mitchell Williamson, Esq.

---

25/  (...continued)
   did not owe. (<u>See</u> Dkt. No. 22: Bodur Br. at 4 ("The defendants will attempt to divert the
   court's focus to the issue of telephone calls, but the real legal issue is the defendants' pursuit
   of an individual who does not owe a debt."), 8-9.) This Court need not address Bodur's other
   FDCPA claims because his damages are the same regardless of whether defendants
   committed one or more FDCPA violations through the same conduct.

   Bodur also claims that defendants' attempt to collect the debt from him violated GBL § 349
   (Compl. ¶¶ 28-38), which prohibits "[d]eceptive acts or practices in the conduct of any
   business, trade or commerce . . . ." G.B.L. § 349(a). Both Bodur and defendants rely on the
   same FDCPA arguments to establish, or deny, liability under GBL § 349. (Dkt. No. 18:
   Defs. Br. at 30-31; Bodur Br. at 10; Dkt. No. 25: Defs. Opp. Br. at 20; Dkt. No. 27: Bodur
   Opp. Br. at 8-11.) Accordingly, the Court decides the summary judgment cross-motions as
   to GBL § 349 the same as the Court's rulings as to the FDCPA.